No. 10,335.

BAKER, ET AL. v. THE DENVER TRAMWAY CO., ET AL.

Decided November 6, 1922.   Rehearing denied December 4, 1922.

Action to have adjudged invalid, a Denver city ordinance purporting to grant additional privileges to a street railway company.   Judgment of dismissal.

*Reversed.*

1.  APPEAL AND ERROR—*Appellate Practice.*   Under the provisions of rule 34, the supreme court may consider any error appearing of record, although counsel may not discuss any error not assigned.

2.  *Jurisdiction.*   The question of jurisdiction may be raised at any stage of an action, and in the appellate court without an assignment of error on the subject.

3.  RECEIVERS—*Suit Against—Permission of Court.*   Failure to obtain permission to sue, in a state court, a receiver appointed by a federal court, does not affect the jurisdiction of the court in which the suit is brought.

4.  MUNICIPAL CORPORATIONS—*Franchises.*   The granting of a right to use the streets of a city for street railway purposes, is a franchise.

5.  *Revocable License to Street Railway Company.* The city council of Denver is without authority to grant to a street railway company a so-called revocable license—in effect a franchise—to use the streets of the city for street railway purposes, except upon a vote of the qualified tax paying electors, under the provisions of article XX of the state Constitution.

*Error to the District Court of the City and County of Denver, Hon. Clarence J. Morley, Judge.*

Mr. JOHN A. RUSH, Mr. FOSTER CLINE, for plaintiffs in error.

Mr. GERALD HUGHES, Mr. H. S. ROBERTSON, Mr. A. E. BOGDON, for defendants in error.

Mr. JAMES A. MARSH, Mr. J. J. LIEBERMAN, *Amici curiae.*

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

PLAINTIFFS in error brought suit in the district court of the City and County of Denver to have adjudged invalid an ordinance of said city purporting to grant to defendant in error, The Denver Tramway Company, the right to construct and operate a street railway on Downing street in said city. Defendants filed separate demurrers, challenging the jurisdiction of the court, and the sufficiency of the complaint. The demurrers were sustained on the ground that the complaint did not state a cause of action. The plaintiffs elected to stand upon their complaint, and the cause was dismissed. It is now before us on error.

The complaint alleged ownership by plaintiffs of property abutting upon Downing street along which the defendant company had obtained from the city council, by an ordinance, a so-called revocable permit to construct and maintain a track as a part of its main line; that the company had theretofore obtained from the city a franchise to operate in certain named streets, not including Downing street, which franchise had been granted by a vote of the taxpaying electors, according to the provisions of article

XX of the state Constitution, and that said article XX expressly prohibited the granting by the City of Denver of any franchise relating to any street, alley or public place, except upon the vote of the qualified taxpaying electors; that the so-called permit was in effect a franchise upon which no vote had been had. The complaint further alleged that the permit was in no proper sense revocable, since the right to revoke it at any time prior to May 15, 1926, a period of nearly five years from the date of the permit, was conditioned upon the city's repaying to the company eighty per cent of the amount paid out and expended under said permit, not including costs of repairs. There were other allegations of the complaint which need not be considered.

The question of jurisdiction raised by the demurrers, and now argued by defendants in error, was not determined in the trial court, and plaintiff in error does not discuss it, on the stated ground that it cannot be considered here, because no assignments of error have been filed raising the question. Such is not the rule. Under rule 34 of this court, we may consider any error appearing of record, though counsel may not discuss any error not assigned. The general rule is that the question of jurisdiction may be raised at any stage of an action, and that, too, without an assignment of error on the subject. 3 J. C. p. 1343.

The defendant company was in the hands of a receiver appointed by the United States Court of the District of Colorado, and it is contended that unless plaintiff obtained from that court leave to sue the receiver, the state court did not obtain jurisdiction of the person of defendants, or of the subject-matter of the suit and that an allegation in the complaint that leave had been granted was necessary. Counsel for defendants in error concede that, under a federal statute, receivers appointed by United States courts may be sued without leave therefor having been first obtained. They insist, however, that the statute in question applies only to cases in which the possession of property by the receiver is not affected. The statute, section 66 of

the United States Judicial Code, is as follows:

"Every receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or. manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such manager or receiver was appointed so far as the same may be necessary to the ends of justice."

The question of the application of the statute to this case depends upon whether or not the act sought to be prevented is an act or transaction of the receiver in carrying on the business connected with the property in his charge. This question is answered in the demurrer of the Tramway Company, which alleges that: "The complaint affirmatively shows that the matters and things complained of relate solely to, and solely concern the management, operation, possession and administration of the defendant's property in the custody of its receiver."

This statement is correct. The permit was obtained after the receiver was appointed. It is not, then, a property interest which came to him by the court's decree, as a part of the property to be protected for the creditors. It is a thing sought to be added to that property, the right to which is in question. This is precisely what, according to the statute, makes leave to sue unnecessary. It is in respect to an act in carrying on the business connected with said property. But the objection would not be valid were this admission not made; nor would it be available if the statute were not in force.

The great weight of authority is to the effect that failure to obtain permission to sue a receiver does not affect the jurisdiction of the court in which the suit is brought. The contrary view is based upon the case of *Barton v. Barbour,* 104 U. S. 126, 26 L. Ed. 672, which has been assumed to lay down a general rule on the subject. Such is not the case. The opinion, by Justice Woods, is, by its terms, lim-

ited to the facts in that case, and no general rule can be derived from it. This decision is said to have been the cause of the enactment of the federal statute above mentioned. Justice Miller strongly dissented, pointing out that the decision was not in accord with the practice of Courts of Chancery in England, in which, if it was thought that a plaintiff in an action was interfering with the functions of a receiver, the court would restrain him by injunction, or punish him for contempt. This eminent judge strongly approved the language of the Wisconsin court in *Kinney v. Crocker*, 18 Wis. 74, where is it said:

"The authorities relied on by the appellant only show that a court of equity will, on a proper application, protect its own receiver where the possession which he holds under the authority of the court is sought to be disturbed, or where he is sued for any act done by the order or direction of the court. In such cases it will sometimes punish as for a contempt, any attempt to disturb the possession of its officer; it will sometimes restrain suits at law, and draw to itself all disputed claims in respect to the subject matter; and sometimes it will allow the suits at law to proceed. But in all these cases it is not a question of jurisdiction in the courts of law, but only a question whether equity will exercise its own acknowledged jurisdiction of restraining suits at law under some circumstances, and itself dispose of the matter involved. It follows that although a plaintiff in such a case, desiring to prosecute a legal claim for damages against a receiver, might, in order to relieve himself from the liability to have his proceedings arrested by an exercise of this equitable jurisdiction, very properly obtain leave to prosecute, yet his failure to do so is no bar to the jurisdiction of the court of law and no defense to an otherwise legal action on the trial."

That the question is not strictly jurisdictional appears in Justice Woods' opinion where it is said:

"But if the receiver by mistake or wrongfully takes possission of property belonging to another, such person may bring suit therefor against him personally as a matter of

right; for, in such case, the receiver would be acting *ultra vires.*"

The court then quotes from the case of *Hills v. Parker,* 111 Mass. 508, 15 Am. Rep. 63, in which the court, by Justice Gray, said:

"The decree of a court of chancery appointing a receiver entitles him to its protection only in the possession of property which he is authorized or directed by the decree to take possession of. When he assumes to take or hold possession of property not embraced in the decree appointing him, and to which the debtor never had any title, he is not acting as the officer or representative of the court of chancery, but is a mere trespasser, and the rightful owner of the property may sue him in any appropriate form of action for damages or to recover possession of the property illegally taken or detained."

In the Wisconsin case above mentioned it is pointed out that under the rule, which it rejects, a federal court might draw to it all litigation affecting property in the hands of a receiver appointed by such court, thus divesting state courts of jurisdiction, unless the federal court saw fit to grant it. The court further said that state courts should not abdicate their jurisdiction over a great class of actions, unless it was established that they are bound to do so, and that it was not so established.

In *Chautauque County Bank v. Risley,* 19 N. Y. 369, 75 Am. Dec. 347, it was held that a suit against a receiver without leave subjects plaintiffs to the charge of contempt, but does not go to the jurisdiction. The doctrine of the Wisconsin case above stated is approved either by direct citation, or in principle, in *People ex rel. v. Barnett,* 91 Ill. 422; *Carter v. Rodewald,* 108 Ill. 351; *Mulcahey v. Strauss,* 151 Ill. 70, 37 N. E. 702; *Lyman v. Central Vermont R. R. Co.,* 59 Vt. 167, 10 Atl. 346; *Tobias v. Tobias,* 51 Ohio St. 519, 38 N. E. 317; *Allen v. Central Railroad,* 42 Iowa, 683; *O. & M. R. Co. v. Nickless,* 71 Ind. 271; *Manker v. Loan Association,* 124 Iowa, 341, 100 N. W. 38; *Burke v. Ellis,* 105 Tenn. 702, 58 S. W. 855; *Sigwald v. City Bank,* 82 S. C.

382, 64 S. E. 398; *Southwestern Ins. Co. v. Pacific Coast Co.,* 92 Wash. 654, 159 Pac. 788; *Flentham v. Steward,* 45 Neb. 640, 63 N. W. 924; *Am. Steel & W. Co. v. Bearse,* 194 Mass. 596, 80 N. E. 623; *Leuthold v. Young,* 32 Minn. 122, 19 N. W. 652; *Hubbell v. Dana,* 9 How. Pr. 424; *St. J. & D. C. R. R. Co. v. Smith,* 19 Kans. 225, and *Reed v. St. Louis & S. F. R. Co.,* 277 Mo. 79, 209 S. W. 892. In this latter case the court refers to *Barton v. Barbour, supra,* and says:

"This opinion has met with much criticism and but few courts have followed it. Some of these have subsequently overruled themselves and rejected the rule of that case."

In *Ridge v. Manker,* 132 Fed. 599, 67 C. C. A. 596, the Circuit Court of the Eighth Circuit had under consideration the question of the right of an Iowa court to entertain jurisdiction of a suit in which the receiver, appointed by a federal court in Missouri, was made a defendant. In the opinion it is said:

"The contention is that a decree against the receivers of another court is a nullity in the absence of an affirmative recital that leave to sue them was obtained and that it may be so declared in a collateral proceeding. The rule is otherwise."

The opinion points out that the court appointing the receiver had taken no action, and that courtesy and good faith, which should mark the relation between courts of different jurisdiction, would not be observed if it were held that the Iowa court had not acquired jurisdiction of the receiver.

In the fourth edition of High on Receivers, section 254a, in discussing the question whether the want of leave to bring an action against a receiver is jurisdictional, or merely an omission which will subject the parties suing without leave to punishment for contempt of court, the author says:

"While the better considered authorities formerly supported the proposition that leave to sue the receiver was jurisdictional in its nature, the great weight of authority, as the result of the later decisions, sustains the opposite view, and it is accordingly held that the failure to obtain

leave is not jurisdictional and that its omission is not fatal to maintaining the action."

In Alderson on Receivers at page 724, it is said:

"The weight of state adjudications, as well as of reason, favors the contrary rule." (Contrary to *Barton v. Barbour.*)

It does not appear that this question has ever been directly decided in this jurisdiction. In *Colorado F. & I. Co. v. Rio Grande So. Ry. Co.,* 8 Colo. App. 493, 46 Pac. 845, the court said of the subject of leave to sue:

"We are not prepared to say that a failure to obtain leave would in any event be pleadable as a bar to the action. Under some circumstances possibly the receiver could restrain the plaintiff from proceeding, and there may be cases which hold that the action will be dismissed on the receiver's application. It is not an universal rule, and some decisions intimate the application would be too late if made after the defendant had moved for a change of venue and filed a demurrer. The right to dismiss is treated as thereby waived. High on Receivers, chap. 8 subdivision 5, section 261; *Hubbell & Curran v. Dana,* 9 How. Pr. 424."

In *Venner v. Denver Union Water Co.,* 40 Colo. 212, 90 Pac. 623, 122 Am. St. Rep. 1036, the right to sue in this state a receiver appointed by a New Jersey court was questioned. The court said:

"The proceedings in the chancery court of New Jersey did not dissolve the corporation, and hence it could be sued the same as before the *ex parte* interlocutory order of April 1892, or the appointment of the reciver in July following. Beach on Receivers (Alderson's Ed.), § 433; 23 Am. & Eng. Enc. Law (2d Ed.) 1047."

Under the authority of this case the court had jurisdiction of the defendant company in any event.

In *St. J. & D. C. R. R. Co. v. Smith supra,* Judge Brewer, then a member of the Kansas supreme court, after holding that the state court had jurisdiction, said that as the case called for the construction of a Kansas statute, it was right that the Kansas court should determine it.

This case involves an interpretation of the state Constitution, and it is therefore important that it be heard and determined in this jurisdiction. In several of the cases cited, it is pointed out that whether or not a state court should take jurisdiction of an action against a receiver appointed by a federal court, is a question of comity only. We are of the opinion, upon both principle and authority that the objection to the jurisdiction was not well taken.

Defendants in error contend that this case is controlled by *McPhee & McGinnity Co. v. Union Pacific R. Co.*, 158 Fed. 5, 87 C. C. A. 619, determined by the Circuit Court of Appeals of this circuit. That case, as stated in the opinion, involved this question: "Is a revocable permission to lay and operate a railroad track on a part of a street, granted to a company authorized by the state to maintain and operate a railroad to and through the city of Denver, a franchise, the grant of which, without the approving vote of the electors of that city, is forbidden by this article?" (Article XX of the Constitution.)

This shows a state of facts radically different from those of the instant case, for which reason the case is not in point. The opinion repeatedly mentions that the franchise of the railroad company comes from the state, which alone, under the constitution, could grant it. The court refers specifically to the constitutional provision, (article XV section 4), which gives railroad corporations the right to construct and operate railroads between any designated points within the state.

As the City of Denver was powerless to grant a franchise to a railroad company, and equally without power to prevent such company from exercising the rights granted by the state, the court necessarily determined that the right then in controversy, granted by the city to a railroad company, was not a franchise. It could not, therefore, fall within the constitutional inhibition invoked by the plaintiffs in error in that case. So it was held that the power of the city, in such a case, is merely regulatory, subject to the general franchise of the company. It would

seem, then, that there was no reason for the extended discussion of the distinction between a franchise and a license in which the opinion indulges.

The conclusion to which the court arrives that municipal grants to companies to use the streets for corporate purposes are licenses, and not franchises would, if applied broadly, render the part of article XX now under consideration a senseless and meaningless provision. It would make the article prohibit something which has not been and never can be done, for if a city never grants a franchise, it is useless to prohibit it from doing it. If, however, the conclusion is restricted to apply only to railroad companies, as it should be, though not so expressed, there is no reason to question it.

Not only did that case involve the rights of a corporation whose franchise came direct from the state, which right was to lay a sidetrack, a right given by the statute, but the right given by the city was limited in point of time by the terms of the license. The action of the city might be sustained on another principle, viz., that a right to lay side tracks necessary to the carrying out of the main business of a railroad company is implied from the franchise itself. 36 Cyc., 1389. If the language of that opinion be applied to the facts in the case, there is nothing in it which can be of aid in determining the case at bar.

The right given by this ordinance was to lay a track in a street as a part of the main line, a right which is in no sense incident to the original franchise. If it be a franchise, it cannot be taken out of the constitutional inhibition by calling it a license. That the right to use the streets of the city for street railroads is a franchise is a matter not open to dispute. If, by a permit of this kind, the city council can grant the right to run cars on a street as a part of the main line, it can in effect enlarge the franchise, and wholly defeat the purpose of the people who placed the restrictions as to franchises in the Constitution.

The Constitution of Nebraska contains a provision prohibiting the legislature from granting the right to con-

struct a street railroad in any city without first requiring the consent of a majority of the electors thereof. *State v. Lincoln Street R. Co.*, 80 Nebr. 333, 114 N. W. 422, 14 L. R. A. (N. S.) 336, involved the right of the street railroad company to extend its lines without a vote of the electors approving the same. The company had a blanket franchise covering all the streets of the City of Lincoln. The court held that no extension could be made, "except by proceeding as required by law to obtain an additional franchise for that purpose and the consent of the electors of the city to such extensions as it may desire to make and such new lines as it may propose to construct."

The same provision of the Nebraska Constitution was under consideration in the recent case of *Lincoln Traction Co. v. Omaha, L. & B. Ry. Co.*, 187 N. W. 790. The city council of Lincoln had in that case, by ordinance, authorized the street railway company to construct six hundred feet of track for main line purposes in a street not theretofore occupied by the street railway company. It was held that the ordinance assuming to grant a right without the consent of the electors was invalid.

We are of the opinion that the city council had no authority to grant to the defendant company the rights which the ordinance purports to give. To uphold such an ordinance is to approve a palpable attempt to evade a provision of article XX of the state Constitution, which reads as follows:

"No franchise relating to any street, alley or public place of the said city and county shall be granted except upon the vote of the qualified taxpaying electors."

If the charter provision for revocable permits authorizes the council to grant permits, which are in effect franchises, such provisions are invalid as in contravention of the Constitution. Just what such permits may cover, we are not now called upon to determine.

The court had jurisdiction; the complaint contains all the allegations necessary to present the question of the valid-

ity of the ordinance, and the demurrers should have been overruled.    The judgment is therefore reversed.

MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE DENISON specially concurring.

I concur in the decision but not wholly with what is said concerning *McPhee & McGinnity Co. v. The Union Pacific R. Co.,* 158 Fed. 5, 87 C. C. A. 619, and am not convinced that this case can be distinguished from that.    I think, however, that the word "franchise" in the twentieth amendment is used as it so often is, to include rights of way on streets and it follows that it includes such a right of way as that before us now.    The McPhee case does not control us; therefore whether it can be distinguished or not, I would reverse this judgment.