No. 22002.

THE CITY OF ENGLEWOOD, COLORADO, A MUNICIPAL CORPORATION *v.* MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, A COLORADO CORPORATION.

(431 P.2d 40)

Decided August 28, 1967.

M‌YRICK, C‌RISWELL, and B‌RANNEY, for plaintiff in error.

A‌KOLT, S‌HEPHERD & D‌ICK, G‌ILBERT M. W‌ESTA, P‌AULINE J. N‌ELSON, for defendant in error.

CHARLES B. HOWE, for Amicus Curiae Colorado Municipal League.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THIS is an action to determine whether the defendant in error's use, without a city franchise, of the public streets belonging to the City of Englewood is lawful. We shall refer to the parties as the plaintiff or city and the defendant or the company.

The writ of error arises due to the dismissal, on motion for failure to state a claim, by the trial court of a second amended complaint wherein the city sought:

(a) A declaratory judgment that defendant has no right or authority to make use of, or to occupy, the streets, alleys or other public places in the plaintiff city for defendant's poles, lines, wires and pipes without first securing the consent of the plaintiff by having a franchise election in accordance with the constitution of the State of Colorado and the charter of the City of Englewood;

(b) A mandatory injunction to force the defendant to negotiate for a franchise;

(c) Quieting title in plaintiff's streets and alleys against defendant;

(d) Damages for an inverse condemnation of the plaintiff's property rights in its streets and alleys; and,

(e) Interest and other relief as may be just and proper.

The record discloses that on July 12, 1943, the defendant was granted a twenty year franchise by the plaintiff, a then statutory city, to operate its telephone system within the city limits of Englewood. On the expiration of that franchise the company refused to seek a new agreement. It further appears that plaintiff be-

came a home rule city under the provisions of Article XX of the Colorado constitution on July 8, 1958; and that the defendant claims it has a right to continue to occupy the city's public streets and alleys without a new city franchise by virtue of C.R.S. 1963, 50-5-1.

We note that the amended complaint though alleging that the company continues to construct, erect, operate and maintain without the plaintiff's consent does not state that new construction is being done without obtaining whatever permits are required by the city and paying whatever charge or assessment the city may impose. We also observe that defendant does not dispute that *if* a franchise is required for what it is doing, then approval thereof must be sought from the municipal voters. We also note defendant concedes that the city under its police powers has regulatory power over its public ways and may require permits for the use thereof as well as for excavations; and, that it also has the power to tax property within its jurisdiction; nevertheless, defendant asserts that continuing to maintain its present property in the plaintiff's public ways requires no new city franchise.

As pertinent here, for reversal plaintiff urges that:

(1) It now being a home rule city, it has the right and duty to require a franchise before it permits the use of its public ways for utility purposes; and,

(2) That due to Article XX of the Colorado constitution such a franchise can be granted by a home rule city only after a vote by the people.

We turn first to the consitutional provisions and statutes applicable to this action. Article XX, § 4, constitution of Colorado, relating to the powers of home rule cities, reads:

"No franchise relating to any street, alley or public place of the said city and county shall be granted except upon the vote of the qualified taxpaying electors, * * *."
Article XXV, adopted by the people on November 2,

1954, relating to powers granted to the General Assembly provides:

"In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefore within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situated or operating within the State of Colorado, whether within or without a home rule city or home rule town, as a public utility, as presently or as may hereafter be defined as a public utility by the laws of the State of Colorado, is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

"Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; provided however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises; and provided, further, that nothing herein shall be construed to apply to municipally owned utilities."

The pertinent statutory provisions are C.R.S. 1963, 50-5-1 and 8. The former reads:

"Use of public highways. — Any domestic or foreign telegraph, telephone, electric light power, gas, or pipeline company, authorized to do business under the laws of this state, or any city or town owning electric power producing or distribution facilities, shall have the right to construct, maintain and operate lines of telegraph, te'ephone, electric light, fire or power or pipeline along, across, upon and under any public highway in this state, subject to the provisions of this article. Such lines of telegraph, telephone, electric light, wire or power or pipeline shall be so constructed and maintained as not to obstruct or hinder the usual travel on such highway." And 50-5-8 provides:

"Nothing in this article shall be construed to authorize any person, partnership, association, corporation, or city or town *to erect* any poles, *construct* any telegraph, telephone, electric light power line, or pipeline, or *extend* any wires or lines along, through, in, upon, under, or over any streets or alleys of any city or incorporated town *without having first obtained the consent of the municipal authorities having power to give the consent of such city or incorporated town.*" (Emphasis added.)

■■■ Applying the above constitutional and statutory provisions to the facts of this case demonstrates that defendant, regardless of the validity of its original city franchise (a point we need not decide), acquired what in law is a valid state franchise or right by virtue of C.R.S. 1963, 50-5-1 and 8. This permitted it not only to maintain its facilities in plaintiff's public ways, but also the right to construct and operate additional ones therein without obtaining a city franchise. In our view the provisions of 50-5-1 are well within the boundaries of Article XXV and, in addition, we hold that the term "public highway" as used in 50-5-1 is not limited to those highways located outside the boundaries of home rule cities, but must include streets within such cities as well. *People v. City and County of Denver*, 90 Colo. 598, 10 P.2d 1106 (1932); *Armstrong v. Johnson Storage and Moving Co.*, 84 Colo. 142, 268 P. 978 (1928); *State ex rel. Rocky Mountain Bell Telephone Co. v. Mayor of City of Red Lodge*, 30 Mont. 338, 76 P. 758 (1904); *Northwestern Telephone Exchange Co. v. City of Minneapolis*, 81 Minn. 140, 86 N.W. 69 (1901); 12 McQuillan, *Municipal Corporations* § 34.11.

■■■ A franchise by definition is a special right or privilege granted by a government to an individual or corporation — such a right as does not ordinarily belong to citizens in general. *McPhee & McGinnity Co. v. Union Pacific R. Co.*, 158 F. 5 (8th Cir. 1907), and see 12 McQuillan, *Municipal Corporations* § 34.01.

■■■ It has been said that the right of a telephone

or telegraph company to maintain its facilities on or in the streets is a franchised right. See *McPhee & McGinnity v. Union Pacific R. Co., supra* at p. 12. A statewide telephone system, however, with its need for coordinated intra and interstate communications is also a matter of statewide concern heavily outweighing any possible municipal interest. See *People ex rel. Public Utilities Comm. et al. v. Mountain States T. & T. Co. et al.,* 125 Colo. 167, 243 P.2d 397 (1952) and *Pacific Telephone and Telegraph Co. v. City and County of San Francisco,* 51 Cal.2d 766, 336 P.2d 514 (1959). It is not like a city gas or electric company operation whose predominant epicenter usually is limited to a local focus. Thus, the question as to whether Englewood has the power to require the company to obtain a city franchise in order to maintain its facilities within the limits of Englewood is answered by saying that the defendant already has such a right granted to it by the state and need not seek a second one, and Englewood cannot force it to either.

The cases of *McPhee & McGinnity v. Union Pacific R. Co., supra,* and *Baker v. Denver Tramway Co.,* 72 Colo. 233, 210 P. 845 (1922), are helpful in resolving the issue before us. In *Baker* it was held that a Denver City Ordinance extending a franchise previously granted by the city to the Denver Tramway Company was void as the question had not been submitted to a vote of the people pursuant to Article XX, § 4. There this court took great care to distinguish that situation from the one presented in *McPhee* on the basis that in *McPhee* the railroad company had held a franchise from the state and therefore the city was powerless to require a further franchise. In *Baker* there was, however, no state franchise by statute or otherwise and the court properly held that the City of Denver had the power to require one. Also see *Traverse City v. Consumers Power Co.,* 340 Mich. 85, 64 N.W.2d 894 (1954).

Here defendant has a franchise from the state by virtue of C.R.S. 1963, 50-5-1. Such a holding, as in

*McPhee,* does no violence to the constitutional provisions permitting home rule cities to grant franchises, for those provisions are applicable to situations such as were presented in *Baker, supra,* where the individual or corporation does not have some type of a state franchise. Thus Article XX has no application here.

██ We point out that C.R.S. 1963, 50-5-8 is perfectly consistent with defendant's position that the city may require, under its police power, reasonable acts on the part of anyone using its streets. For example, it can require the securing of a permit or license, with attending fee requirements, prior to the erection of a new pole in a certain place or the extension of a wire along a particular street or the reasonable regulation of objects which may be placed in its streets and alleys. See *Traverse City v. Consumers Power Co., supra* at p. 903; *Southern Bell Telephone and Telegraph Co. v. City of Nashville,* 35 Tenn. App. 207, 243 S.W.2d 617 (1951); and *Northwestern Telephone Exchange Co. v. City of Minneapolis, supra.* We note though in passing that there is nothing in C.R.S. 1963, 50-5-8 which requires the consent of a municipality for the maintenance or operation of telephone facilities once they have been previously, and we assume, lawfully installed. This does not mean, however, that a perpetual right has vested in the utility, by virtue of any statutory grant, for such would violate Article II, Section 11 of the Colorado constitution. The right is merely one to continue until the state, which granted the privilege, desires to modify, alter or withdraw it.

The judgment is affirmed.