The CITY OF GREELEY, a municipal corporation, and Home Light and Power Company, a Colorado corporation, Plaintiffs-Appellants,

v.

·POUDRE VALLEY RURAL ELECTRIC ASSOCIATION, INC., Defendant-Appellee.

No. 85SA293.

Supreme Court of Colorado, En Banc.

Sept. 8, 1987.

Rehearing Denied Oct. 5, 1987.

Law Department City of Greeley, Don K. DeFord, Glenwood Springs, Edward "Jed"

M. Caswall, John P. DiFalco, Greeley, for plaintiff-appellant The City of Greeley.

Kelly, Stansfield & O'Donnell, James R. McCotter, James K. Tarpey, Denver, for plaintiff-appellant Home Light and Power Co.

Holmes & Starr, P.C., Kenneth L. Starr, Ann Livedalen, Randolph W. Starr, Denver, for defendant-appellee Poudre Valley Rural Elec. Ass'n, Inc.

John J. Conway, Denver, for amicus curiae Colorado Rural Elec. Ass'n, Inc.

Gerald E. Dahl, Tami A. Tanoue, Denver, for amicus curiae Colorado Mun. League.

Gorsuch, Kirgis, Campbell, Walker and Grover, Paula M. Connelly, Joseph B. Wilson, Denver, for amicus curiae Colorado Assoc. of Mun. Utilities.

ERICKSON, Justice.

■ The City of Greeley (City) and the Home Light and Power Company (Home Light), plaintiffs below, appeal from an adverse judgment of the Weld County District Court.[1] The trial court held that provisions of the City Charter and City Code, which require public utilities to obtain a franchise to use city streets, were unenforceable against the defendant, Poudre Valley Rural Electric Association (REA). REA claimed, and the trial court held, that REA had the right to continue and expand electric service in a portion of an area annexed by the City, because the relevant annexed area previously was served by REA pursuant to a certificate of public convenience and necessity issued by the Public Utilities Commission (PUC). We conclude that REA is not required to obtain a city franchise to operate and maintain its electric distribution system within the City as it existed at the time of the annexation. REA must obtain a city franchise if it desires to use city streets or public places in order to expand and provide new service within that portion of its certificated service area that was annexed by the City. We affirm the district court in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I.

The facts are largely undisputed and are contained in the findings of the trial court. The present action is the culmination of a fifteen-year dispute between Home Light and REA over the right to provide electric service in certain areas of Weld County.

Greeley is a home rule city under Article XX, section 6 of the Colorado Constitution. Home Light is a private corporation operating as an investor-owned utility. REA is a cooperative electric association and is a public utility under section 40–1–103(2), 17 C.R.S. (1984).[2]

On June 18, 1968, Home Light obtained a twenty-five-year franchise from the City, which granted Home Light the right to provide electric service within the territorial boundaries of the City. The franchise was approved by qualified electors in accordance with Colo. Const. art. XX, §§ 4 and 6, and provides: "The Company [Home Light] shall furnish electric energy within the corporate limits of the city as such limits now exist or may during the term of this franchise be extended...." The franchise was confirmed by PUC Decision No. 71606 on July 18, 1968.[3]

Before the 1968 franchise was granted, Home Light, REA, and the Public Service Company of Colorado were parties involved in litigation relating to their respective

---

1. The City and Home Light filed the appeal in this court initially, and requested that we take jurisdiction pursuant to section 13–4–102(1)(b), 6 C.R.S. (1973)

2. Section 40–1–103(2)(a), 17 C.R.S. (1984), states in pertinent part:

   Every cooperative electric association, or nonprofit electric corporation or association, and every other supplier of electric energy, whether supplying electric energy for the use of the public or for the use of its own mem-

bers, is hereby declared to be affected with a public interest and to be a public utility and to be subject to the jurisdiction, control, and regulation of the commission and to the provisions of articles 1 to 7 of the title.

3. The parties apparently did not introduce a copy of PUC Decision No. 71606 into evidence. While we are unable to review the language of the PUC's decision, the parties agree that the PUC approved Home Light's exercise of the City franchise rights.

rights to serve Boulder, Weld, and Larimer Counties. The litigation culminated in *Public Utilities Commission v. Home Light and Power Co.*, 163 Colo. 72, 428 P.2d 928 (1967) (*Home Light I*). The district court in *Home Light I* reversed a PUC decision dividing the disputed service areas among the various electric companies. We affirmed the judgment of the district court in part and reversed in part. Following the decision in *Home Light I*, Home Light and REA stipulated to a division of some of the disputed service areas. The stipulation was submitted to the PUC and, in PUC Decision No. 74654 (April 3, 1970), the PUC approved the territorial division agreed to by the companies. Each utility was granted a certificate of public convenience and necessity to provide service in the area allocated by stipulation. The PUC's confirmation of the stipulation made no provision for changing the territorial allocation in the event of municipal annexation, and, when PUC Decision No. 74654 was announced, no part of the territory assigned to REA was within the corporate boundaries of the City.

In 1981, the City annexed areas to the south and west, including a parcel known as Highland Park West.[4] REA was authorized to serve a portion of Highland Park West pursuant to the 1970 stipulated territorial division approved by the PUC. At the time of trial, REA was providing service to approximately five customers in Highland Park West and its certificate of public convenience and necessity authorized REA to serve only the area within the western edge of the subdivision. The remainder of the subdivision was certificated to Home Light.

On July 15, 1981, Home Light filed Application No. 34000 with the PUC to determine whether Home Light's 1968 City franchise included the right to provide electric service in the annexed area, including that portion of Highland Park certificated to REA. A hearing was held and the hearing officer recommended that the application be dismissed. Home Light sought review by the PUC and filed exceptions to the hearing officer's recommendation. The PUC adopted the hearing officer's recommendation and concluded that REA rather than Home Light was authorized to provide service in its certificated area within the annexed territory. The PUC declared that a certificated area constitutes a valuable property right that cannot be taken except by due process of law, and that due process is satisfied only upon a showing that the certificated utility is unwilling or unable to serve its certificated area. The PUC determined that Home Light did not introduce any evidence "to establish unfitness on the part of Poudre Valley [REA] to serve the area in question," and dismissed Home Light's application. The final paragraph of the PUC decision states:

> Home Light contends ... that it obtained a franchise from Greeley to provide utility service within the Greeley municipal boundaries. Home Light further contends that this right extends to future annexations of the city, and areas certificated to Poudre Valley outside of such area must give way to the franchise right. The Commission need not decide whether this abstract statement by Home Light is legally correct, [because] in any event this contention disregards the 1970 agreement between Home Light and Poudre Valley, where these parties agreed to serve certain areas on an exclusive basis. By the 1970 agreement, territory to the south and west of the 1970 city limits of Greeley, the area involved in this proceeding, was to be served by Poudre Valley on an exclusive basis. The Commission gave specific approval and effect to this agreement in Decision No. 74654, dated April 3, 1970. Accordingly, Home Light and Power voluntarily surrendered its right to serve in the area in question.

Home Light did not seek judicial review of the PUC order dismissing its application. *See* § 40-6-115, 17 C.R.S. (1984).

---

4. The Highland Park West subdivision constitutes approximately the southwest quarter of Section 15, Township 5 North, Range 66 West, Sixth Principal Meridian, in Weld County, Colorado.

On May 18, 1982,[5] the City Council enacted Ordinances 26 and 27. Ordinance 26, codified as Chapter 14.40 of the City Code, required an electric utility to obtain a city franchise before operating within the city limits:

14.40.010 Compliance. It is unlawful to maintain or install any wires, cables or other equipment for the transmission of electric current impulses in, on, under or over any street, alley, sidewalk or other public place in the city, or to maintain or install any pole or mast to support or hold such wires or equipment in any such place, without having fully complied with the provisions of this chapter.

14.40.020 Franchise—Required. After the effective date of the ordinance codified in this section, no such wire, cable, pole or other equipment shall be installed or maintained over, on or under any such place unless, pursuant to Article XVIII of the Charter of the city, a franchise has been granted for such installation or maintenance. In order to permit the necessary time to obtain a franchise pursuant to Article XVIII of the City Charter, any facilities described in Section 14.40.010 which exist on the effective date of the ordinance codified in this section may continue to be maintained for a period of one hundred eighty days after the effective date of the ordinance codified in this section without the requirement of a franchise.

Section 18–3 of Article XVIII of the City Charter prohibited the City from granting any franchise "except upon the majority vote of the qualified electors voting thereon at a special election called for such purpose."[6] Ordinance 27 authorized an election by qualified electors to determine whether a franchise should be awarded to REA. The terms of the proposed franchise were essentially the same as those of the franchise granted to Home Light in 1968. The election was held on July 13, 1982, and the electorate rejected the proposed franchise by a vote of 1,505 to 419.

---

5. Before Home Light filed Application No. 34000 with the PUC, it had come to the attention of the City that REA was providing electric service to small areas within the municipal boundaries. Representatives of the City and REA began preliminary negotiations to award a franchise to REA to operate within the City limits. The negotiations were held in abeyance when the 1981 PUC proceeding was commenced. After the PUC ruled in favor of REA, the parties once again turned their attention to the matter of a city franchise for REA.

The record reveals that REA originally sought a city franchise on June 2, 1981. After the PUC issued its decision dismissing Home Light's Application No. 34000, REA advised the City that it sought a "permit" rather than a franchise in order to operate within the City boundaries. REA objected to and declined to participate in the special franchise election.

6. City Charter section 18.3 conformed to the Colorado Constitution's limitations on the granting of franchises by home rule cities. At all times relevant to this decision, Colo. Const. Art. XX, § 4 provided:

No franchise relating to any street, alley or public place ... shall be granted except upon the vote of the registered electors....

Although article XX, section 4 by its terms applies only to the City and County of Denver, its provisions are made applicable to other home rule municipalities by article XX, section 6.

In November 1986, the voters of Colorado amended Colo. Const. Art. XX, § 4 to eliminate the requirement that franchise questions be automatically submitted to a vote. The amendment explicitly states, however, that the award of any franchise is subject to the powers of initiative and referendum. The current version of Art. XX, § 4 states in pertinent part:

Any franchise relating to any street, alley, or public place of the said city and county shall be subject to the initiative and referendum powers reserved to the people under Section 1 of Article V of this constitution. Such referendum power shall be guaranteed notwithstanding a recital in an ordinance granting such franchise that such ordinance is necessary for the immediate preservation of the public peace, health, and safety. Not more than five percent of the registered electors of a home rule city shall be required to order such referendum. Nothing in this section shall preclude a home rule charter provision which requires a lesser number of registered electors to order such referendum or which requires a franchise to be voted on by the registered electors....

See House Concurrent Resolution No. 1002, § 1, 1986 Colo.Sess.Laws 1239, 1240. The governor proclaimed the passage of the amendment after the election results were tabulated and certified. Executive Order, "Proclamation Certifying Vote on Certain Measures," 2, ¶ 3 (December 17, 1986).

The constitutional amendment does not affect our resolution of this case.

On September 22, 1982, the City commenced this action for declaratory judgment against REA in the Weld County District Court. The original complaint sought (1) a declaration that REA could not operate that portion of its electric distribution system installed within the City without obtaining a franchise, and (2) an injunction ordering REA to cease operating that system and dispose of it. Home Light was permitted to intervene, and its complaint sought (1) a declaration that Home Light was the proper utility to render electric service within the city limits, and (2) an injunction prohibiting REA from providing electric service within the City. REA answered the City's complaint and Home Light's complaint in intervention. The City amended its complaint, limiting its prayer for injunctive relief to prohibit REA from extending its facilities without first obtaining a franchise. Home Light did not amend its complaint in intervention.

Trial was held in May 1984. The trial court found that (1) REA serves a total of 17,000 customers, six of whom were located within the City, (2) REA obtained its power through a statewide and interstate network, and (3) REA's "predominant epicenter is not limited to a local focus, and particularly is not limited to plaintiff city." The district court concluded:

3. Decision No. 74664 of the Colorado Public Utilities Commission dividing territory in Weld County, Colorado, between plaintiff Home Light and defendant is equivalent to a state franchise for defendant to provide electric service to the territory assigned to it.

4. Plaintiff Greeley does not have the power to require a city franchise as a condition for service by defendant in the portions of plaintiff Greeley lying within the area assigned to defendant by the Colorado Public Utilities Commission decision No. 74664.

5. Plaintiff Home Light may not provide electric service to those portions of plaintiff Greeley within the area assigned to defendant by decision No. 74664 of the Colorado Public Utilities Commission.

The district court entered the following judgment:

(A) The plaintiff City of Greeley, Colorado, has no power to require a city franchise as a condition to the continuation or expansion of the electric service provided by the defendant [REA] in any area which was awarded to that defendant by [PUC] decision No. 74664 ..., dividing territory in Weld County, Colorado, between defendant and plaintiff Home Light and Power Company and which area has been or shall hereafter be annexed to plaintiff City of Greeley. Any provisions of the charter or ordinances of the plaintiff City of Greeley requiring such a franchise are void as against defendant.

(B) Regardless of the terms of its city franchise from plaintiff City of Greeley, plaintiff Home Light and Power Company may not provide electric service to the portions of plaintiff City of Greeley lying within the area which was awarded to defendant [REA] by [PUC] decision No. 74664....

## II.

The City contends that REA cannot use streets, alleys, sidewalks or other public places to expand its present facilities in the annexed area without first obtaining a city franchise in accordance with section 14.40 of the City Code and Article XVIII of the City Charter. REA maintains that the City cannot condition REA's expansion of its current facilities within the annexed area upon the acquisition of a municipal franchise because (1) REA's certificate of public convenience and necessity is a state franchise to provide service in its certificated area, and (2) the state franchise supersedes the requirement for a municipal franchise because REA's business is a matter of statewide concern. It is necessary to review the nature and the source of the rights conferred by municipal franchises and PUC certificates of public convenience and necessity to resolve the issues on appeal.

## A. Municipal Franchises

We have defined a franchise as "a special right or privilege, granted by a government to an individual or corporation—such a right as does not ordinarily belong to citizens in general." *City of Englewood v. Mountain State Tel. & Tel. Co.*, 163 Colo. 400, 405, 431 P.2d 40, 43 (1967); *see also Community Tele-Communications v. Heather Corp.*, 677 P.2d 330 (Colo.1984); *City of Englewood v. Crabtree*, 157 Colo. 593, 404 P.2d 525, *cert. dismissed*, 382 U.S. 934, 86 S.Ct. 385, 15 L.Ed.2d 347 (1965); *see generally* 12 E. McQuillin, *Municipal Corporations* § 34.03, at 11 (3d ed. 1986). A "grant of a right to maintain and operate public utilities within a municipality and to exact compensation for such services is a franchise." 12 E. McQuillin, *Municipal Corporations* § 34.03, at 11 (3d ed. 1986); *see also Berman v. City and County of Denver*, 120 Colo. 218, 209 P.2d 754 (1949) (authorization to operate busses and trolleys along Denver streets was a franchise); *Baker v. Denver Tramway Co.*, 72 Colo. 233, 210 P. 845 (1922) (authorization for the construction of a street railway was a franchise).

■ The state has the power to grant franchises because the franchise power inheres in the sovereign. Thus, a "municipal corporation in granting [a franchise] acts as the agent of the state. In this relation it represents the state's sovereign power." 12 E. McQuillin, *Municipal Corporations* § 34.03, at 11 (3d ed. 1986); *see also Sioux City St. Ry. Co. v. Sioux City*, 138 U.S. 98, 11 S.Ct. 226, 34 L.Ed. 898 (1891); *Hayes v. Michigan Cent. R.R. Co.*, 111 U.S. 228, 4 S.Ct. 369, 28 L.Ed. 410 (1884). The power of the sovereign to grant franchises is subject, of course, to constitutional limitations, "as, for example, a provision requiring the obtaining, in respect of certain franchises, of the consent of local authorities...." 37 C.J.S. *Franchises* § 14, at 157 (1943).

■ When this case was commenced, the Colorado Constitution prohibited the grant of a franchise "relating to any street, alley or public place" in the City and County of Denver "except upon the vote of the qualified taxpaying electors...." Colo. Const. art. XX, § 4. The same prohibition was extended to all home rule municipalities by Colo. Const. art. XX, § 6. *See, e.g., Community Tele-Communications v. Heather Corp.*, 677 P.2d 330 (Colo.1984). The object of article XX, sections 4 and 6, is to give the taxpaying electors of home rule cities absolute control over the granting of franchises to use city streets, alleys and public places. *Id.* at 336; *Berman v. City and County of Denver*, 120 Colo. 218, 239, 209 P.2d 754, 760 (1949); *Ward v. Colorado E.R.R. Co.*, 22 Colo.App. 332, 135 P. 567 (1912), *aff'd*, 59 Colo. 589, 149 P. 1193 (1915). Thus, our Constitution prohibits the State from granting a franchise "relating to" the streets of home rule cities without obtaining the consent of the municipality in the form of a vote of the qualified, taxpaying electors.

## B. Certificates of Public Convenience

In 1954, the Colorado Constitution was amended to include Article XXV, which provides:

### Public Utilities

In addition to the powers now vested in the General Assembly of the State of Colorado, all power to regulate the facilities, service and rates and charges therefor, including facilities and service and rates and charges therefor within home rule cities and home rule towns, of every corporation, individual, or association of individuals, wheresoever situate or operating within the State of Colorado, whether within or without a home rule city or home rule town, as a public utility, as presently or as may hereafter be defined as a public utility by the laws of the State of Colorado, is hereby vested in such agency of the State of Colorado as the General Assembly shall by law designate.

Until such time as the General Assembly may otherwise designate, said authority shall be vested in the Public Utilities Commission of the State of Colorado; *provided, however, nothing herein shall affect the power of municipalities to exercise reasonable police and licensing powers, nor their power to grant franchises;* and provided, further, that nothing herein shall be

construed to apply to municipally owned utilities.

(Emphasis added).

■ Article XXV vests the PUC with the power to regulate the "facilities and service and rates and charges therefor" of public utilities, "wheresoever situate or operating within the State of Colorado, whether within or without a home rule city or home rule town." The authority granted is subject to two exceptions: Article XXV does not affect the power of municipalities to exercise reasonable police and licensing powers, "nor their power to grant franchises," nor does it apply to municipally owned facilities.

■ Article XXV grants the PUC authority to issue certificates of public convenience and necessity. *See Miller Bros. v. Public Util. Comm'n,* 185 Colo. 414, 525 P.2d 443 (1974). Generally, a certificate of public convenience and necessity creates a right to service the customers in the certificated region, unless the company is not ready, willing, and able to provide the service requested. *Rocky Mountain Natural Gas Co. v. Public Util. Comm'n,* 199 Colo. 352, 617 P.2d 1175 (1980). We have stated that the "right to give service under an existing certificate of convenience and necessity is a property right under Colorado law and may not be affected except by due process of law." *Public Serv. Co. v. Public Util. Comm'n,* 174 Colo. 231, 234, 483 P.2d 1337, 1339 (1971) (citation omitted).

■ The authority of the PUC to grant certificates of public convenience and necessity is expressly limited by our constitution and statutes. *Union Rural Elec. Ass'n v. Town of Frederick,* 670 P.2d 4, 6 (Colo.1983). Colorado Constitution article XXV, the provision which vests the PUC with its broad regulatory authority, expressly provides that it does not affect a municipality's authority to grant franchises, which is reserved to its taxpaying electorate. Colo. Const. art. XX, §§ 4, 6. The statutes delineating the power and jurisdiction of the PUC also indicate that a PUC certificate is in addition to, and not superior to, a municipal franchise. Section 40–5–101, 17 C.R.S. (1984), prohibits a pub-

lic utility from constructing "a new facility, plant, or system ... without first" obtaining "from the commission a certificate that the present or future public convenience and necessity require or will require such construction." Section 40–5–102, 17 C.R.S. (1984), imposes the limitation that a public utility "shall not exercise any right or privilege *under any franchise* ... granted after April 12, 1913, ... without first having obtained from the commission a certificate that public convenience and necessity require the exercise of such right or privilege." (Emphasis added.) Accordingly, "[e]very applicant for a certificate to exercise franchise rights under section 40–5–102 shall file in the office of the commission such evidence ... to show that such applicant has received the *required* consent, franchise, permit, ordinance, vote, or other authority of the proper ... municipal or other public authority." § 40–5–103(1), 17 C.R.S. (1984) (emphasis added). The constitutional and statutory provisions demonstrate that municipal and PUC consent are necessary to operate a public utility within a home rule city; neither the General Assembly nor its designated agency, the PUC, is empowered to grant a public utility a franchise to use a home rule city's streets, alleys, and public places in the absence of the municipality's consent.

### III.

REA and the trial court relied exclusively on our decision in *City of Englewood v. Mountain States Telephone & Telegraph Co.,* 163 Colo. 400, 431 P.2d 40 (1967) (hereinafter *City of Englewood* ). In that case, the telephone company was granted a franchise by Englewood, then a statutory city, to operate its telephone system within the city limits. Englewood subsequently became a home rule city under Colorado Constitution article XX. The twenty-year franchise expired thereafter, and the telephone company refused to seek a new agreement. We held that the telephone company had acquired a state franchise, absolving it of any need to seek a renewal of the city franchise. Our holding was based on sec-

tions 50–5–1 and 50–5–8, 3 C.R.S. (1963), which provided:

> **50–5–1. Use of public highways.** Any domestic or foreign telegraph, telephone, electric light power, gas, or pipeline company authorized to do business under the laws of this state or any city or town owning electric power producing or distribution facilities shall have the right to construct, maintain, and operate lines of telegraph, telephone, electric light, wire or power or pipeline along, across, upon and under any public highway in this state, subject to the provisions of this article. Such lines of telegraph, telephone, electric light, wire or power or pipeline shall be so constructed and maintained as not to obstruct or hinder the usual travel on such highway.
>
> **50–5–8. Consent necessary to use of streets.** Nothing in this article shall be construed to authorize any person, partnership, association, corporation, or city or town *to erect* any poles, *construct* any telegraph, telephone, electric light power line, or pipeline, or *extend* any wires or lines along, through, in, upon, under, or over any streets or alleys of any city or incorporated town *without having first obtained the consent of the municipal authorities having power to give the consent of such city or incorporated town.*

(Emphasis as quoted in *City of Englewood.*)

> We held that the telephone company acquired what in law is a valid state franchise or right by virtue of C.R.S. 1963 50–5–1 and –8. This permitted it not only to maintain its facilities in plaintiff's public ways, but also the right to construct and operate additional ones therein without obtaining a city franchise. In our view the provisions of 50–5–1 are well within the boundaries of [Colo. Const.] Art. XXV and, in addition, we hold that the term "public highway" as used in 50–5–1 is not limited to those highways located outside the boundaries of home rule cities, but must include streets within such cities as well.

*City of Englewood,* 163 Colo. at 405, 431 P.2d at 42 (citations omitted).

Sections 50–5–1 and –8, 3 C.R.S. (1963), have been recodified in identical language as sections 38–5–101 and –108, 16A C.R.S. (1982). REA maintains that it is an electric light power company within the meaning of section 38–5–101, and that, under our holding in *City of Englewood,* it too is exempt from having to obtain a city franchise. We disagree.

In *City of Englewood,* the telephone company obtained the consent of the city to use its streets when the original franchise was granted in 1943. We held that, having thus "obtained the consent of the municipal authorities," section 50–5–1 granted the telephone company a state franchise to continue using public highways, *i.e.,* city streets, without acquiring a city franchise. Only this interpretation explains the court's emphasis of the particular words of section 50–5–8, 3 C.R.S. (1963). To hold otherwise would be to interpret *City of Englewood* as ignoring the limitation on the use of public ways by public utilities contained in section 50–5–8 and its successor, section 38–5–108, 16A C.R.S. (1982), and we decline to do so.

In this case, REA has never obtained the consent of the City to use its streets in order to expand its facilities as they existed when Highland Park West was annexed. Indeed, REA sought consent from the qualified electorate and its request was overwhelmingly rejected in the franchise election. REA does not occupy the same position as the telephone company did in *City of Englewood,* and REA does not come under our holding in that case.

## IV.

We have never before addressed the issue of the effect of a home rule city's annexation of an area certificated to a rural electric association by the PUC. We considered a somewhat similar scenario in *Union Rural Elec. Ass'n v. Town of Frederick,* 670 P.2d 4 (Colo.1983). Frederick, Colorado is a statutory town that operated a municipally owned electric utility. The town annexed two tracts of land that were within the area certificated to Union Rural

Electric Association (Union), and the municipal utility extended its lines to provide electric service requested by new customers in the annexed area. Union brought suit to enjoin Frederick from providing electric service in Union's certificated territory. We noted that "[b]y limiting the PUC's jurisdiction, the Colorado Constitution correspondingly restricts the scope of the rights granted by the PUC to public utilities." *Id.* at 6. We held that "Frederick's annexing of the adjacent territory and its subsequent furnishing of electric service as requested by new customers within the annexed territory was proper and did not constitute a taking of Union's property without due process of law." *Id.* at 9. Our holding was squarely based on Colo. Const. art. XXV's proviso that the vesting of regulatory authority over public utilities in the PUC shall not "be construed to apply to municipally owned utilities."

██ *Town of Frederick* provides support for our decision today. Article XXV not only excludes municipal utilities from the jurisdiction of the PUC, its terms also unequivocally state that the municipality's "power to grant franchises" shall remain unaffected. Thus, the authority under which REA operates, derived as it is from the PUC, cannot authorize REA to expand its current system and use city streets without obtaining a municipal franchise.

Our conclusion is consistent with the weight of authority from other jurisdictions that have addressed the issue. Although the statutory and constitutional provisions differ from jurisdiction to jurisdiction, the majority view is that a certificated rural electric association is permitted to continue serving the customers it had on the date of annexation, but that the association is not entitled to build or operate new facilities in the annexed area without first obtaining municipal consent. *See Georgia Power Co. v. Altamaha Rural Elec. Membership Corp.*, 217 Ga. 376, 122 S.E.2d 250 (1961); *Missouri Public Serv. Co. v. Platte-Clay Elec. Coop.*, 407 S.W.2d 883 (Mo.1966); *Pee Dee Elec. Membership Corp. v. Carolina Power & Light Co.*, 253 N.C. 610, 117 S.E.2d 764 (1961); *Caddo Elec. Coop. v. State ex rel. Whelan*, 391 P.2d 234 (Okla. 1964); *City of Abbeville v. Aiken Elec.*

*Coop.*, 287 S.C. 361, 338 S.E.2d 831 (1985); *State ex rel. Southwestern Gas and Elec. Co. v. Upshur Rural Elec. Coop.*, 156 Tex. 633, 298 S.W.2d 805 (1957); *Tri-County Elec. Ass'n v. City of Gillette*, 584 P.2d 995 (Wyo.1978); *But see Delta Elec. Power Ass'n v. Mississippi Power & Light Co.*, 250 Miss. 482, 149 So. 2d 504, *cert. denied*, 375 U.S. 77, 84 S.Ct. 196, 11 L.Ed.2d 142 (1963); *Town of Culpeper v. Virginia Elec. and Power Co.*, 215 Va. 189, 207 S.E.2d 864 (1974) (both cases holding that municipal annexation cannot affect rural electric association's right to serve current and future members within the utilities' certificated areas).

V.

We hold that REA cannot extend its facilities as they existed at the time of the annexation without obtaining a city franchise for that purpose. REA is entitled to continue operating and maintaining its facilities within the City as they existed at the time the Highland Park West annexation became effective. The district court therefore correctly denied the relief requested by Home Light, but erred in denying the declaratory and injunctive relief requested in the City's amended complaint. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.