**SEQUA CORPORATION, a Delaware corporation, Plaintiff,**

v.

**LITITECH, INC., a Colorado corporation, and Paul X. McMenaman, individually, Defendants and Third–Party Plaintiffs,**

v.

**Stuart Z. KRINSLY, Bernard M. Jaffe, Gerald S. Gutterman, and Norman E. Alexander, jointly and individually, Third–Party Defendants.**

Civ. A. No. 91–B–185.

United States District Court, D. Colorado.

Jan. 15, 1992.

John M. Kobayashi, Cheryl L. Post, Susan I. Strong, Kobayashi & Associates, P.C., Denver, Colo., for plaintiff.

Gregory R. Piche, Holland & Hart, Denver, Colo., for defendant.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

In this diversity action, plaintiff Sequa Corporation moves for summary judgment on defendants' counterclaim for breach of contract. The issues are adequately briefed and oral argument will not materially aid in their resolution. Because plain-

tiff is not entitled to summary judgment as a matter of law and because there are genuine disputes of material fact, the motion is denied.

Both parties submitted extensive affidavits and exhibits in support of their respective positions on this motion. Based on this information, I have gleaned the following.

Over a period of years before 1990, Sequa acquired a number of companies that were defending a substantial volume of products liability litigation. In 1986, Sequa hired Paul X. McMenaman to investigate, supervise, and manage all of Sequa's products liability and insurance litigation and to provide other consulting services regarding these suits. In addition to these supervisory duties, McMenaman also represented Sequa as attorney of record in some of the actions.

In 1990, with the encouragement of Sequa, McMenaman formed Lititech, Inc. to perform the supervisory, managerial, and consulting services he previously provided in his individual capacity. On April 1, 1990, Lititech and Sequa allegedly entered into a fee agreement. The agreement identifies three classes of claims and provides a different fee structure for each class. Class A claims call for Lititech to supervise and manage a body of litigation as designated by Sequa. Class B claims call for Lititech to act, in essence, as Sequa's agent for the collection of subrogation claims, indemnity claims, contribution claims, and contract claims as designated by Sequa. Finally, Class C claims call for Lititech, "through its attorneys," to represent Sequa as attorney of record in cases designated by Sequa.

Through the affidavits of McMenaman and Joseph Anastasio, a former executive of Sequa, defendants assert that this fee agreement was not intended to be an integrated contract. They allege additional actual and implied terms based upon oral promises, the prior course of dealings between Sequa and McMenaman, and the course of performance under the fee agreement. These affidavits state that Sequa and Lititech intended a dual role for defendants. Lititech and McMenaman would supervise and manage all of Sequa's litigation, while McMenaman in his individual capacity would represent Sequa as attorney of record in selected cases.

In their counterclaim, defendants allege that Sequa breached this contract in October, 1990. Sequa moves for summary judgment on this claim, asserting that (1) the contract calls for the unauthorized practice of law and, thus, is void as against public policy, (2) the contract does not obligate Sequa to perform, (3) the contract is illusory, (4) the contract is terminable at will, and (5) Lititech materially breached first. Sequa also asserts that the contract issues are governed by New York law.

## I.

### CHOICE OF LAW

In a diversity action, I must apply Colorado's choice of law rules. *Dorr v. Briggs*, 709 F.Supp. 1005, 1006 (D.Colo. 1989). Colorado has adopted the "most significant relationship" test from the Restatement (Second) of Conflicts of Law. *Wood Brothers Homes, Inc. v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (1979). Moreover, when, as here, a contract calls for the performance of services, Colorado presumptively applies the law of the state where the majority of the services are to be performed. *Id.* 601 P.2d at 1373; Restatement (Second) of Conflict of Laws § 196 (1969).

Here, the contract called for Lititech to supervise, manage, and direct Sequa's extensive litigation. It is clear that Lititech and McMenaman would perform the major portion of these services at Lititech's Colorado office. Therefore, Colorado has the most significant relationship to the agreement and Colorado law will apply to the questions concerning the validity, interpretation, and breach of the fee agreement.

## II.

### STANDARDS FOR SUMMARY JUDGMENT

A moving party is entitled to summary judgment "if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the opposing party cannot rest on mere allegations in his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party must present sufficient evidence so that a reasonable juror could find for it. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### III.

### UNAUTHORIZED PRACTICE OF LAW

Sequa alleges that the fee agreement on its face calls for Lititech to practice law. Sequa also argues that, in practice, Lititech engaged in the unauthorized practice of law.

■ A precise definition of what constitutes the unauthorized practice of law is neither possible nor desirable. Ethical Consideration 3–5. EC 3–5 states that "Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer." Clearly, the entry of appearance by a non-lawyer for a private client constitutes the practice of law, as does the rendition of purely legal services or advice to a client. *See e.g., Dietrich Corp. v. King Resources Co.,* 596 F.2d 422, 426 (10th Cir.1979); *Unauthorized Practice of Law Committee v. Prog,* 761 P.2d 1111, 1115 (Colo.1988). In *Conway–Bogue Realty Investment Co. v. Denver Bar Assoc.,* 135 Colo. 398, 312 P.2d 998 (1957), the court stressed a common sense approach to this question that protects the public interest.

■ Even though a precise definition is not possible, some types of acts are clearly not the practice of law. Consulting services involving legal areas or issues are not the practice of law if the consultant does not enter an appearance or perform direct legal services. *Dietrich Corp.,* 596 F.2d at 426; *Catoe v. Knox,* 709 P.2d 964, 966 (Colo.App.1985). The collection of claims is also not the practice of law. It is proper for the claim holder to assign his rights to another and for that person to press the claim, settle the claim, or hire an attorney to bring suit on the claim. *Thibodeaux v. Creditor's Service, Inc.,* 191 Colo. 215, 551 P.2d 714 (1976).

■ With regard to Class A claims under the fee agreement, Lititech neither entered an appearance in these cases nor rendered direct legal services or advice. It merely coordinated and managed attorneys throughout the country who were defending actions for Sequa. Individual attorneys followed a specific schedule devised by Lititech for the investigation of each case. These attorneys submitted periodic reports to Lititech. Lititech approved costs and attorney fees before they were incurred. In effect, Lititech was Sequa's agent to manage the conduct of approximately 1800 separate cases. Merely because Lititech had licensed attorneys performing these management duties does not constitute the practice of law.

■ With regard to Class B claims, Lititech was simply Sequa's assignee for the collection of subrogation and indemnity claims. As such, Lititech had the same ability as Sequa to investigate each claim, to settle it, or to hire an attorney to bring a lawsuit. This is not the practice of law.

■ Finally, as to Class C cases, the fee agreement states that Lititech, "through its attorneys," would appear as attorney of record in cases designated by Sequa. This language is ambiguous. It could mean that Lititech would appear in its own right or it could mean that individual attorneys would appear in their own name subject to Lititech's general management authority. Parol evidence not inconsistent with the fee agreement is admissi-

ble to resolve this ambiguity. *Radiology Professional Corporation v. Trinidad Area Health Association, Inc.*, 195 Colo. 253, 577 P.2d 748, 750 (1978). *See also, I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo.1986). This alone creates a genuine issue of material fact whether Lititech engaged in the practice of law as to Class C cases.

 Moreover, the McMenaman and Anastasio affidavits state that the parties' intent was for McMenaman to provide attorney of record services to Sequa in his individual capacity. This evidence is consistent with the prior course of dealings between Sequa and McMenaman in which he was a manager and consultant on all pending products liability and insurance litigation but attorney of record only on select cases. Similarly, there is conflicting evidence on the course of performance under the agreement. Defendants' affidavits raise a genuine issue of material fact as to whether this dual role continued after the formation of Lititech and the execution of the fee agreement. Therefore, I cannot say as a matter of law that the Class C claims provisions of the agreement call for the unauthorized practice of law, and genuine issues of material fact remain as to these Class C claims.

 Relying on *Title Guaranty Co. v. Denver Bar Assoc.*, 135 Colo. 423, 312 P.2d 1011, 1017 (1957), Sequa further argues that Lititech practiced law because its agent, McMenaman, practiced law. However, the language relied on by Sequa is dictum and distinguishable. There, an attorney employed by a title insurance company was preparing conveyancing documents for title insurance applicants. The court said the company itself was practicing law because the attorney was its agent and because the attorney owed his first duty of loyalty to the company and not the applicant. Here, defendants submitted Rule 56 papers showing that McMenaman acted in his individual capacity, rather than as Lititech's agent, when he represented Sequa as an attorney. It is a well-settled tenet of agency law that a person can be an agent for some purposes and not for others. A genuine issue of fact exists on this agency question.

 Further, a genuine dispute exists on the issue of divided loyalty. The Rule 56 papers tend to show that Lititech worked exclusively for Sequa, as did McMenaman when he was attorney of record.

As a matter of law, I cannot say that Lititech practiced law with regard to the cases designated Class A and B in the fee agreement and summary judgment is denied. Because there are genuine disputes of material fact whether the Class C claims provisions call for the practice of law, summary judgment is inappropriate.

### IV.

### CONTRACT ISSUES

As to all defenses asserted by Sequa to defendants' breach of contract counterclaim, there are genuine issues of material fact and, therefore, summary judgment will be denied.

 The goal of contract law is to enforce the intent of the parties. Where there is a written instrument, the intent of the parties is to be determined from the language of the instrument itself. *Radiology Professional Corp.*, 577 P.2d at 750. However, where the language of the instrument is ambiguous, parol evidence is admissible to prove the intent of the parties. *Id.*

 Here, the fee agreement is ambiguous on all issues raised by Sequa in its motion for summary judgment. For example, Sequa argues that the agreement is illusory and unenforceable because it does not obligate Sequa to actually assign any Class A cases to Lititech. However, the agreement clearly obligates Sequa to pay Lititech $300,000 in exchange for Lititech's best efforts. The agreement is silent on whether Sequa must pay this money even if it assigns no cases to Lititech. Further, the term of the agreement is shown as April 1, 1990 through March 31, 1991. Thus, it is ambiguous whether Sequa can terminate at will. The agreement does not express that it is fully integrated. Indeed, by calling the instrument a "fee agreement," the parties left open the possibility that contract terms unrelated to fees would not be included in that writing.

Because the agreement is ambiguous, I consider defendants' proffered parol evidence on the parties' intent. Through the affidavits of McMenaman and Anastasio, defendants state that the parties intended that Sequa would actually assign cases to Lititech, that the contract would run for a year without being terminable at will, and that the contract would be renewed. Further, there is a genuine dispute as to which party, if any, first materially breached the agreement. Moreover, the parties' course of performance from April, 1990 to October, 1990 is consistent with defendants' parol evidence of intent. Sequa, in fact, assigned cases to Lititech. McMenaman represented Sequa as attorney of record in his individual capacity. Lititech signed a long-term lease and invested heavily in computer hardware and developed a software program to manage Sequa's litigation.

Thus, there are genuine issues of fact material to the interpretation of the agreement and the determination of which party, if any, breached the agreement. Therefore, summary judgment is denied.

Accordingly, IT IS ORDERED THAT:

(1) Plaintiff's motion for summary judgment is DENIED.