**FOUR STRONG WINDS, INC.,**
Plaintiff–Appellee,

v.

**Odd LYNGHOLM, Third–Party Plaintiff
and Defendant–Appellant,**

v.

**Michael CHAUSSEE, Third–Party
Defendant–Appellee.**

No. 90CA1711.

Colorado Court of Appeals,
Div. III.

Jan. 16, 1992.

Robert J. Mason, Colorado Springs, for plaintiff-appellee and third-party defendant-appellee.

Gorsuch, Kirgis, Campbell, Walker and Grover, Tammy W. Akers, Colorado Springs, for third-party plaintiff and defendant-appellant.

Opinion by Judge CRISWELL.

Plaintiff, Four Strong Winds, Inc., instituted suit against defendant, Odd Lyngholm, on two promissory notes signed by defendant. The trial court concluded that plaintiff's bid at a public trustee's foreclosure sale of property that secured payment of a third note was unconscionably low. Hence, it deducted certain sums from the balance due on the two notes sued

upon and entered judgment for plaintiff for the balance. Plaintiff does not appeal from, or otherwise contest, the court's actions in making these deductions from the balances due. Defendant, however, appeals from the judgment entered against him, asserting that the trial court erred in not making further deductions. In light of the issues presented to us, we reverse and remand for reconsideration by the trial court of the amount of the judgment to be entered.

Defendant purchased a parcel of realty with improvements from plaintiff's assignor, Michael Chaussee, who is the sole stockholder of the plaintiff corporation. In conjunction with that transaction, defendant assumed a then existing first deed of trust that secured payment of an obligation to a third party and executed and delivered three promissory notes to the stockholder. Two of the notes, one in the amount of $148,000 and one for $100,000, were each secured by a separate deed of trust upon the property that was the subject of the transaction.

After defendant defaulted upon at least two of these notes, plaintiff's stockholder commenced foreclosure proceedings upon the deeds of trust securing both the $148,-000 and the $100,000 promissory notes. Later, however, the request for foreclosure upon the deed of trust securing the $100,-000 note was withdrawn, and a foreclosure sale was conducted with respect to the $148,000 note only.

While the public trustee's sale was pending, plaintiff's stockholder successfully petitioned the court for the appointment of a receiver to collect the rents and to maintain the property. Plaintiff's stockholder was appointed receiver and served in that capacity until after defendant's right of redemption had expired and an order discharging him as such receiver was entered.

Thereafter, the stockholder assigned his interest in the $100,000 note and the third note in the face amount of $42,000 to plaintiff, and it instituted suit against defendant to collect the amounts due under the terms of those two notes. In defending against plaintiff's claims, defendant joined plaintiff's stockholder as a third-party defendant and asserted, among other things, that (1) the stockholder had canceled the obligation represented by the $42,000 note, (2) the stockholder in his capacity as receiver had committed various violations of the fiduciary obligation owed to defendant, and (3) the method and manner selected by the stockholder to foreclose upon the deeds of trust were unconscionable.

After a bench trial, the court determined that the $42,000 note had not been canceled. It also concluded that defendant had failed to establish grounds to reopen the receivership proceeding so as to permit the vacation of the order discharging the receiver and the assertion of the claims described in defendant's third-party complaint against the stockholder. Nevertheless, it sustained defendant's claim of unconscionability, at least in part, and reduced the amount due on the two notes in the manner described below.

## I.

Defendant first argues that the trial court erred in refusing to entertain his claim that the stockholder, when acting in his capacity as a receiver, took various actions which violated the fiduciary obligation that he owed to all parties interested in the property, including defendant. We disagree.

Colorado statutes authorize the appointment of a receiver for property which is being foreclosed upon, but the procedure to be used in asserting claims against the appointed receiver is not specifically delineated in those statutes. *See* §§ 38–39–112 and 38–39–113, C.R.S. (1982 Repl.Vol. 16A). Accordingly, common law principles govern the parties' rights and obligations, as well as the court's authority, with respect to such claims.

At the common law, a party could not institute an independent suit against a receiver without first obtaining permission to do so from the receiver's supervising court. *Baker v. Denver Tramway Co.*, 72 Colo. 233, 210 P. 845 (1922). And, the supervising court could refuse such permission and require any claim to be submitted to it.

*See Logsdon v. Quiat,* 102 Colo. 560, 81 P.2d 770 (1938).

■ Hence, a claim based upon the receiver's alleged breach of his fiduciary obligation may be asserted in the receivership proceedings. *See Zeligman v. Juergens,* 762 P.2d 783 (Colo.App.1988).

■ The supervising court retains jurisdiction over a fiduciary until an order discharging the fiduciary is entered. At that point, the order of discharge constitutes a final judgment, subject to appellate review. *Valley Federal Savings & Loan Ass'n v. Aspen Accommodations, Inc.,* 716 P.2d 483 (Colo.App.1986).

Here, when plaintiff's stockholder filed his final report as receiver and sought his discharge from such position, he asserted that defendant owed funds to the receivership because of defendant's receipt and use of rental proceeds from the property after the receiver was appointed. In addition, defendant filed various objections to the receiver's final report, contesting certain expenditures and asserting that the receiver had damaged certain items of personalty that had been left on the premises.

After a trial before the supervising court of these claims and objections, that court entered a written order disposing of all such claims and objections and discharging the receiver. No appeal from that order was taken by either party.

■ In the instant proceedings, defendant sought to assert further claims against the stockholder for actions taken or omitted by him during the course of the receivership and in alleged violation of his obligations as receiver. After a full evidentiary hearing, however, the trial court here concluded that defendant had shown no basis to reopen the receivership proceedings and, therefore, denied defendant's claims asserted against the stockholder. We conclude that such action was proper.

■ As we have noted, an order discharging a fiduciary is a final judgment. Therefore, if a party interested in receivership proceedings is provided with notice of those proceedings and of the receiver's application for discharge, any claim based upon the receiver's mis- or mal-feasance must be presented in those proceedings at that time. After an order discharging the receiver is entered, such a claim may be asserted only to the extent that C.R.C.P. 60 would authorize the vacation of the order discharging the receiver.

To relieve a party of the effect of a final judgment, that party must demonstrate the existence of some reason justifying such action, such as excusable neglect, lack of jurisdiction, fraud, or other equitable consideration. *See* C.R.C.P. 60(b); *Cortvriendt v. Cortvriendt,* 146 Colo. 387, 361 P.2d 767 (1961). However, the trial court here found no such basis for vacating the order of discharge, and defendant does not argue that that finding is not supported by the record. Hence, even if we assume that a claim against a discharged fiduciary may be pursued by means of an independent action outside the supervisory court, *see* C.R.C.P. 60(b), defendant failed to establish any basis to relieve him from the effect of that prior order of discharge.

## II.

■ We also reject defendant's assertion that the trial court erred in refusing either to prohibit plaintiff from calling an expert witness, to limit that witness' testimony, or to grant a continuance of the trial so that defendant could secure another expert.

■ The purpose underlying the requirement of C.R.C.P. 16 for the pre-trial disclosure of witnesses is to prevent undue surprise and to allow all parties an opportunity for adequate preparation. *See Conrad v. Imatani,* 724 P.2d 89 (Colo.App.1986). Therefore, it generally rests within the sound discretion of the trial court to enforce this requirement and to determine whether any violation of this requirement merits the imposition of sanctions and, if so, the nature of the sanction to be imposed. *See Daniels v. Rapco Foam, Inc.,* 762 P.2d 717 (Colo.App.1988); *Murphy v. Colorado Aviation, Inc.,* 41 Colo.App. 237, 588 P.2d 877 (1978).

Here, both parties designated the same witness as an evaluation witness in their

pre-trial disclosure statements, although it was apparently defendant who had initially contacted the witness to prepare an appraisal report upon the property. Later, plaintiff contacted the witness to have him produce an undated appraisal to determine the value of the property at a later date.

Defendant asserted that plaintiff did not provide information concerning this updated appraisal to him in a timely fashion, and it was this alleged tardiness upon which defendant grounded his request to prohibit or to limit this expert's testimony or to have the trial delayed so that he might secure another expert. In making these requests, defendant made no claim that plaintiff's request of this expert for an undated appraisal was in any manner improper under C.R.C.P. 16, as such.

The trial court denied all of these requests. In doing so, it noted that the expert was originally engaged by defendant and that the updated appraisal was something that either party could be expected to request as a part of the ultimate trial preparation.

Given the circumstances portrayed by this record, we cannot conclude that the trial court abused its discretion in reaching this conclusion.

### III.

Although the trial court rejected defendant's claims based upon the stockholder's alleged violation of his fiduciary obligations as the receiver, it concluded that his actions respecting the foreclosure proceedings were "unseemly." This conclusion was based upon the stockholder's actions in first instituting foreclosure proceedings with respect to both secured notes (totalling some $248,000 in principal), but then postponing, and later withdrawing, the foreclosure proceedings with respect to the $100,000 note. As a result, the stockholder purchased the property at the foreclosure sale for a price representing the amount due on the $148,000 note, plus accrued interest, legal fees and other costs, but subject to the principal and accrued interest due on the pre-existing note to another party secured by the first deed of trust.

Thereafter, although the foreclosure proceedings ultimately extinguished the lien created by the deed of trust securing the $100,000 note, the stockholder brought suit to obtain a personal judgment against defendant on that note.

Based on these circumstances, the trial court concluded that the foreclosure proceedings were unconscionable to the extent that the price bid by the stockholder was less than the fair market value of the property. In its final judgment, therefore, it subtracted from the amounts due to plaintiff under the two notes sued upon the difference between the property's fair market value and the amount bid by plaintiff at the foreclosure sale.

Because plaintiff has not contested the resulting judgment nor the legal analysis used by the trial court in rendering that judgment, the question whether the trial court properly applied the doctrine of unconscionability has not been presented to us, and we cannot, therefore, pass upon it. *See United Bank v. One Center Joint Venture*, 773 P.2d 637 (Colo.App.1989) (involving suit for deficiency on secured note after foreclosure).

However, defendant argues that, given the trial court's conclusion upon this point, it erred both in selecting the date upon which the property's fair market value was to be determined and in determining the proper amounts to be deducted. We agree with both contentions, at least in part.

### A.

■ All parties agree that, to determine whether the stockholder's bid was improper, it is necessary to compare that bid with the fair market value of the property on the date of the foreclosure sale, and not with its value at some later date. And, this approach was important here because the expert evidence was that the property's value underwent a decrease after the foreclosure sale and during the period of redemption.

Ultimately, after the period of redemption had run and the stockholder had received a public trustee's deed, the property

was sold to a disinterested third party for the sum of $435,000. Based upon this evidence, the trial court adopted the following finding:

When the redemption period had run on March 21, 1989 the property had a value of $435,000 as is reflected on the sale by [the stockholder] to [the new purchaser].... The court has heard various appraisals concerning the property but believes that that actual sale is the best indicator of all of what the real value of the property was. The appraisal for September 21, 1988, the date of the bid at the Public Trustee Sale, was even higher and amounted to $457,000.

Defendant argues that this finding demonstrates that the court used the property's value as of the redemption date, rather than its value as of the date of the foreclosure sale, as the appropriate standard against which to measure the propriety of the stockholder's bid. However, in our view, the court's reference to the 1989 purchase price could simply mean that it deemed such price to be more reflective of the property's true value at the date of the foreclosure sale than was the appraiser's testimony.

In any event, these findings do not make clear whether the trial court used the property's value on the date of the foreclosure sale, September 21, 1988, or its value on the date that the redemption period expired, March 21, 1989, as the important date for evaluation purposes. Hence, the matter must be remanded to the trial court for it to determine the fair market value of the property as of September 21, 1988, and to base all of its calculations upon such value.

### B.

Defendant also argues that, again given the finding of unconscionability, the court erred in calculating the amounts to be deducted from the sums due under the two promissory notes. We agree.

In the case of a breach of contract, the "paramount objective is to place the non-breaching party in the position he would have enjoyed were it not for the breach."

*Elijah v. Fender,* 674 P.2d 946 (Colo.1984). *See also Kniffin v. Colorado Western Development Co.,* 622 P.2d 586 (Colo.App. 1980).

■ Here, the assertion that the stockholder's bid at the foreclosure sale was unconscionably low, given the circumstances, was not framed in terms of a contract breach. Nevertheless, to the extent that such bid caused defendant damage, he should be placed in the position he would have enjoyed had a fair market value bid been made. *See United Bank v. One Center Joint Venture, supra.*

■ In attempting to implement this precept, the trial court sought to determine the amount that would have been required for defendant to redeem the property, some six months after the foreclosure sale was conducted, and to credit defendant with the difference between the fair market value of the property and this redemption figure. However, this approach failed to place defendant in the same position that he would have occupied had a fair market value bid been made by the stockholder in the first instance.

■ The statutory provisions now codified as §§ 38–38–111(1) and (2), C.R.S. (1991 Cum.Supp.), provide that, if the foreclosure sale results in a bid in excess of the amount needed to pay the holder of the legal indebtedness and all expenses of the sale, such excess funds are to be delivered to the county treasurer who is to hold them pending expiration of the redemption period. At that time, such funds are to be used to pay junior lienors, in order of their priority, and the owner of record of the property as of the date of the sale is entitled to receive any remaining funds.

Therefore, the amount to be credited against the notes sued upon should be calculated as if a bid for the full, fair market value of the property had been made at the time of the foreclosure sale. This would involve the following:

First, the court must determine the fair market value of the property as of the date of the foreclosure sale. This figure will

represent the amount of the bid that the stockholder should have entered.

Second, from that amount, the following must be deducted:

i. The sum of $170,248.46, which represents the principal balance of the note secured by the deed of trust that was foreclosed upon, accrued interest through the date of the sale, and all proper expenses attendant to the sale. Had a proper bid been made, this note would have been paid in full as of the date of the foreclosure sale; hence, after deducting this sum, defendant should not be charged with any further liability (either in the form of continuing interest or otherwise) under this note;

ii. A sum representing the principal balance due on the first deed of trust held by the third party, together with accrued interest as of the date of the foreclosure sale. While the excess funds would not have been required, under the statute, to be used to retire this obligation, the stockholder ultimately paid this note and should receive credit for that payment;

iii. Any taxes paid between the date of the foreclosure sale and the last day of the redemption period.

The remaining balance, then, should be credited against any amounts due, first, under the $100,000 note and, thereafter, under the $42,000 note.

In calculating interest due on the $100,000 note and the $42,000 note, the court should consider that no payment was made on either note until the last day of the redemption period, but that no default occurred for purposes of any default interest provision in either note until the first due date set forth in that note. Interest at the rate established by these two notes should be calculated up to the date of the entry of the judgment to be entered after remand.

The judgment is reversed, and the cause is remanded to the trial court for that court to reconsider its previous findings and judgment and to enter further findings and

an amended judgment in accordance with the views set forth above.

METZGER and NEY, JJ., concur.