STRATEGIS ASSET VALUATION & MANAGEMENT, INC., a Pennsylvania corporation, Plaintiff,

v.

PACIFIC MUTUAL LIFE INSURANCE COMPANY, a California corporation, PMRealty Management Company, a California corporation, Defendants and third-party plaintiffs,

v.

Mark A. DUNN, as Receiver, Third-party defendant.

Civ. A. No. 91–B–876.

United States District Court, D. Colorado.

Nov. 9, 1992.

)

John M. Desmond, Jones & Keller, P.C., Denver, Colo., for plaintiff.

Daniel R. Frost, John M. Tanner, Fairfield and Woods, P.C., Denver, Colo., for defendants.

Christopher C. O'Dell, Anne H. Pierson, Shaw, Spangler & Roth, Denver, Colo., for third party defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

### I. Background

Before me are: (1) plaintiff Strategis Asset Valuation & Management, Inc.'s (Strategis) motion for summary judgment; (2) defendants Pacific Mutual Life Insurance Company's (Pacific Mutual) and PMRealty Management Company's (PMRealty) (collectively defendants) cross motion for summary judgment; (3) defendants' second motion for summary judgment; and (4) third-party defendant Mark A. Dunn's (Dunn) motion to dismiss. The parties have briefed the motions fully. After briefing the motions the parties supplemented their motions with additional affidavits and deposition transcripts. Having considered all the briefs and evidence submitted I will grant Strategis' summary judgment motion, deny defendants' summary judgment motions, and grant Dunn's motion to dismiss.

■ Jurisdiction rests on complete diversity of citizenship. 28 U.S.C. § 1332(a)(1) (1988). I apply Colorado's choice of law rules to determine which state's law applies. *Sequa Corp. v. Lititech, Inc.,* 780 F.Supp. 1349, 1351 (D.Colo.1992). Colorado law applies because this dispute centers around a contract which was to be performed in Colorado. *Sequa,* 780 F.Supp. at 1351.

### II. Facts

Until 1990 Pacific Mutual owned the Mall of the Bluffs shopping center located in El Paso County Colorado. PMRealty is a "real estate subsidiary" of Pacific Mutual. Strategis provided real estate tax consulting services to defendants in 1987 and 1989 for the Mall of the Bluffs' tax assessments. In accordance with these contracts Strategis reviewed and, when necessary, negotiated to reduce the taxable value of the Mall of the Bluffs. On March 9, 1989 Strategis and defendants entered into a contingency fee tax consulting agreement (the contract). (Strategis summary judgment motion exhibit D.) Under this contract Strategis was to:

1. Review and analyze the values placed on the real estate to determine if a fair and equitable value has been assigned by the assessor.

2. Appeal the values as necessary. Any appeal that requires attorney or appraiser services are subject to your prior approval and are to be paid for directly by you.

3. Provide a written report summarizing the results of our review and negotiations and provide a tax estimate report for accrual purposes, utilizing the best information available at the time of your request.

4. Should an appeal be carried forward into the following year, Strategis will file a protective appeal for the appeal pending. The contingency fee for the second year will be the same as the first year.

The contract provides for Strategis to "receive 50 percent of the 1989 tax year's savings resulting from any reduction in assessment" payable as follows:

a) A portion is payable when the time a value reduction is documented. Forty percent (40%) times fifty percent (50%) of the value reduction is multiplied by the estimated tax rate to determine this portion of our fees.

b) The balance is payable when the 1989 tax rate is known. The 1989 tax rate times fifty percent (50%) of the value reduction less the fee paid a) above, will determine the balance of the fee due.

Stewart Leach (Leach) and Steve Letman (Letman), two of Strategis' employees, worked on the Mall of the Bluffs' 1989 tax assessment. During August 1989 Leach obtained authorization from one of the defendants to appeal the assessor's determination of the Mall of the Bluffs' taxable value to the district court. (Leach affidavit ¶ 14.) On August 31, 1989 Leach caused this appeal to be filed. (Leach affidavit ¶ 15.) In November 1989 Strategis replaced Leach with another employee to work on the Mall of the Bluffs tax appeal. (Leach affidavit ¶ 17.) On December 9, 1989 Letman negotiated a property value settlement with the El Paso County Assessor's Office. (Letman affidavit ¶ 8.) Before this settlement could become binding Letman needed defendants' consent. (Letman affidavit ¶ 8.) However, Letman never presented this settlement to defendants for their approval. (Letman affidavit ¶ 10.)

On December 11, 1989 Letman and Ronald L. Bower (Bower), Pacific Mutual's assistant secretary and PMRealty's senior vice president, had a telephone conversation about the Mall of the Bluffs. (Letman affidavit ¶ 12.) During this conversation Bower claims he informed Letman that the Mall of the Bluffs was going into foreclosure and no further work on defendants' behalf was necessary. (Bower affidavit ¶ 9.) Letman recalls this conversation as follows: "He basically said that they were going to let the property go into foreclosure, and it was going to be taken back

by Minnesota Mutual, and it might be a good idea if I called Minnesota Mutual about them taking over the contract, or something to that effect." (Letman deposition p. 12 ll. 6–10.) Letman also signed two affidavits in which he states that "during this telephone conversation Ronald Bower informed me that Pacific Mutual Life Insurance Company was planning to allow the Property to go into foreclosure, and that Strategis "may" wish to contact the lender, Minnesota Mutual Life." (Letman affidavit dated January 31, 1992 ¶ 9; Letman affidavit dated March 25, 1992 ¶ 9.) Letman maintains, however, that Bower never terminated Strategis' authority or the contract during this conversation. (Letman affidavit ¶ 12.)

On December 20, 1989 Strategis received the following December 11, 1989 letter from PMRealty:

Dear Steve:

Pacific Mutual has defaulted under the loan obligation for the captioned property. The lender (Minnesota Mutual) has started foreclosure proceedings and is expected to take possession of the property sometime in December.

Since you are currently in the process of appealing the 1989 assessment, you may want to contact the lender to determine if they wish to continue on with your services.

. . . . .

/s/ Ronald L. Bower
Senior Vice President

(Defendants' summary judgment response exhibit 4.)

On December 14, 1989 Letman sent a letter to Minnesota Mutual recognizing the likelihood that defendants would not honor the contract. (Defendants' supplement to cross motion for summary judgment exhibit B.) Letman was concerned that Strategis would not be compensated for its work on the tax assessment. (*Id.*) He encouraged Minnesota Mutual to assume defendants' obligations under the contract. (*Id.*)

Also on this date Letman caused an attorney to file a confidential settlement letter with the El Paso County District Court

reflecting that the assessor's office had agreed to reduce the value of the property to approximately $8,000,000.00. (Letman affidavit ¶ 13 and December 14, 1989 letter attached thereto.) This letter also reflects that defendants had not yet approved the value reduction. (*Id.*) During the December 11, 1989 conversation Letman and Bower did not discuss the property settlement Letman negotiated on December 9, 1989. (Letman affidavit ¶ 10.)

On January 2, 1990 PMRealty received an invoice prepared by Strategis on December 29, 1989 for the work it performed on the Mall of the Bluffs tax assessment. (Defendants' summary judgment response exhibit 5.) The December 29, 1989 invoice reflects a value reduction to $7,998,995.00. Strategis calculates that this value reduction entitles it to fee of $61,748.61 under the contract. This amount includes $1,131.55 for attorney fees.

On January 4, 1990 PMRealty sent Strategis a letter stating that it would not pay the invoice because it terminated the contract on December 11, 1989. (Defendants' summary judgment response exhibit 6.) Also, on January 17, 1990 PMRealty informed the El Paso County Assessor's Office that Strategis no longer had authority to represent Pacific Mutual or any of its subsidiaries in connection with the Mall of the Bluffs tax appeal. (Defendants' summary judgment response exhibit 7.)

On February 6, 1990 the El Paso County District Court appointed Mark A. Dunn (Dunn) receiver for the Mall of the Bluffs. (Dunn motion to dismiss exhibit A.) In early April 1990 Dunn and the El Paso County Board of Equalization stipulated that the taxable value of the Mall of the Bluffs would be $7,998,995.00. (Strategis' summary judgment motion exhibit I.) On April 17, 1990 the El Paso County District Court approved this stipulation. (Strategis' summary judgment motion exhibit I.) Strategis assisted Dunn in reaching this value reduction. (Strategis' reply and response brief at 10.) The amount of the April 17, 1990 court approved value reduction matches the value reduction reported in Strategis' December 29, 1989 invoice.

(*Compare* Strategis' summary judgment motion exhibit I *with* defendants' summary judgment response exhibit 5.) Defendants never paid Strategis for its services under the 1989 contract.

Strategis asserts breach of contract and quantum meruit claims against defendants. Defendants primarily claim they are not liable because they had the right to terminate Strategis' authority at any time. Defendants assert third party claims against Dunn, the essence of which shift their liability to him, should Strategis prevail on its claims.

## III. Strategis' Motion for Summary Judgment and Defendants' Cross Motion for Summary Judgment

### A. *General Standards*

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). The operative inquiry is whether, based on all the documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares*, 971 F.2d at 494. Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512; *Mares*, 971 F.2d at 494.

### B. *Breach of Contract*

Strategis' summary judgment motion and defendants' cross summary judgment motion address Strategis' breach of contract claim only. Strategis' quantum meruit claim is the subject of defendants' second

summary judgment motion which will be discussed in section IV.B., *infra*.

The parties agree that an agency relationship existed between Strategis and defendants. Defendants contend that, as Strategis' principals, they could terminate the agency without incurring liability under the contract before Strategis reduced the tax assessment.

 A principal has the power to terminate an agent's authority at any time, although the termination may breach its contract with the agent. *Ireland v. Wynkoop*, 36 Colo.App. 205, 225, 539 P.2d 1349, 1362 (1975); *Restatement (Second) of Agency* § 118 cmt. b (1958). A principal, however, has a duty not to repudiate or terminate an agent's employment in violation of their contract of employment. *Restatement (Second) of Agency* § 450 (1958). Where, as here, a principal has contracted to employ an agent until the happening of a specified contingency he has a duty not to exercise his power to terminate the employment. *Restatement (Second) of Agency* § 450 cmt. a.

 Although there is a dispute whether defendants terminated Strategis' authority on December 11, December 20, January 4, or January 17, it is undisputed that the value reduction had not been achieved by any of these dates. Defendants, therefore, repudiated the contract and breached their duty not to terminate Strategis' employment before Strategis reduced the Mall of the Bluffs' taxable value. *See Restatement (Second) of Agency* § 450 cmt. a.

 A principal breaches his contract with his agent when he repudiates the contract before the time for performance. *Restatement (Second) of Agency* § 450 cmt. c. Defendants do not argue and, therefore, I do not consider whether Strategis had adequate time to perform the contract. By way of example but not limitation the Restatement lists three ways repudiation can occur:

> (a) by a positive statement to the agent that the principal will not or cannot perform; (b) by transfer or contract to transfer to anyone, not his agent or an assignee of the contract, an interest in anything essential to the performance of his duties; or (c) by any act making or intended to make his substantial performance impossible or apparently impossible.

*Restatement (Second) of Agency* § 450 cmt. c.

By at least January 17, 1990 defendants informed Strategis that it no longer required its services. This notice amounts to a positive statement that defendants will not perform or will be unable to perform under the contract. No reasonable trier of fact could find otherwise. Moreover, Pacific Mutual defaulted on the loan which was secured by its interest in the Mall of the Bluffs. This default resulted in foreclosure which divested Pacific Mutual of its interest in the Mall of the Bluffs. In determining whether defendants repudiated the contract, I perceive no difference between a voluntary transfer of an interest in the property and a default on the loan which deprives Pacific Mutual of its interest in the property. In any event, defendants' action caused the loss of the property which was essential to the performance of the contract. Again no reasonable trier of fact could determine otherwise. Defendants, therefore, repudiated the contract when they informed Strategis they no longer required its services. *See Restatement (Second) of Agency* § 450 cmt. c. Although a principal has the power to terminate an agent's authority at any time, when defendants terminated Strategis' authority they did so risking liability for breach of contract.

 Where an obligor repudiates a duty before he has committed a breach by nonperformance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach. *Restatement (Second) of Contracts* § 253(1) (1981). Defendants did nothing to nullify the repudiation. *See Restatement (Second) of Contracts* § 256 (1981). Also, as explained in section III. C., *infra*, frustration of purpose did not excuse defendants' breach. *See Restatement (Second) of Contracts* § 254(2)

(1981). Therefore, when defendants repudiated the contract Strategis had a claim for breach of contract.

■ An agent's damages for termination of his employment in breach of a contract are the amount of the net losses caused or the gains prevented by the principal's breach or the reasonable value of his services previously rendered. *Restatement (Second) of Agency* § 450 cmt. d; *Restatement (Second) of Agency* § 455(a) (1958). Strategis argues that it is entitled to the contingency fee it would have earned had defendants performed under the contract. It does not argue, and therefore I do not consider, its entitlement to the reasonable value of its services.

■ Strategis' December 29, 1989 invoice reflects that it reduced the Mall of the Bluffs' value to $7,998,995.00. Strategis calculates that this value reduction would have yielded a fee of $60,617.06 under the contract. Defendants contend the invoice is not evidence of Strategis' damages because it is not supported by an affidavit. I disagree.

A property value reduction indisputably produces a tax savings. The tax savings achieved as a result of a value reduction plainly determines Strategis' fee. The taxable value reflected in the December 29, 1989 invoice, and on which Strategis relies to calculate its fee, matches the value reduction ultimately achieved. The December 29, 1989 invoice, therefore, is good evidence of the gains Strategis lost as a result of defendants' breach of contract.

■ The December 29, 1989 invoice reflects that Strategis incurred legal fees of $1,131.55 in reducing the tax assessment. Strategis presents no evidence indicating defendants authorized the expenditure of these legal fees. Defendants deny they authorized Strategis to incur these legal fees. (Bower affidavit ¶ 12.) Because Strategis never received defendants' authorization to retain a lawyer, the legal fees it incurred are not recoverable. Strategis' gains prevented by defendants' breach of contract, therefore, amount to $60,617.06. Strategis is entitled to judgment on its breach of contract claim in the amount of $60,617.06.

### C. *Frustration of Purpose*

■ Defendants argue that the foreclosure frustrated the purpose of the contract, which in turn excuses their performance under the contract. The frustration of purpose doctrine is not available to a party whose own fault caused the event defeating the purpose of the contract. *Restatement (Second) of Contract* § 265 (1981). Defendants' default on the loan secured by the Mall of Bluffs frustrated the purpose of the contract. Thus, their performance is not excused.

### D. *Strategis' Alleged Disloyalty*

■ Defendants also argue that Strategis forfeited its right to compensation under the contract because it breached its duty of loyalty by continuing to work on the Mall of the Bluffs tax assessment after defendants terminated its authority. Defendants theorize that they terminated Strategis' authority on December 11, 1989. Unless otherwise agreed, an agent is subject to a duty not to act as such after termination of his authority. *Restatement (Second) of Agency* § 386 (1958). Defendants argue that Strategis' continued work on the Mall of the Bluffs tax assessment breached this duty. Accordingly, defendants contend that Strategis forfeits its compensation under the contract. This argument is in the nature of an affirmative defense.

■ An agent is entitled to no compensation for conduct which is a breach of his duty of loyalty. *Moore and Co. v. T-A-L-L, Inc.*, 792 P.2d 794, 800 (Colo.1990) (quoting *Restatement (Second) of Agency* § 469 (1958) (section 469)).

■ Strategis argues that *Moore and Co.* and section 469 are inapplicable because its continued work on the assessment is not a breach of a duty of loyalty. The loyalty duties an agent owes to its principal are stated in sections 387 through 398 of the *Restatement (Second) of Agency*. *Restatement (Second) of Agency* § 469 cmt.

a. Defendants rely on no loyalty duties stated in these sections to support its affirmative defense. Rather they rely on a non-loyalty duty stated in section 386 to support its affirmative defense. Therefore, *Moore and Co.* and section 469 are inapplicable.

Moreover, this affirmative defense is inapplicable to a claim for anticipatory breach of contract. Strategis had the right to sue for breach of contract when defendants repudiated the contract. *See Restatement (Second) of Contracts* § 253(1). While some events after a repudiation will excuse a repudiator's performance under the contract, *see Restatement (Second) of Contracts* §§ 254 and 256, an agent's continued work under the contract after his authority is terminated is not one of these events. None of the events excusing defendants' failure to perform occurred here. Therefore, Strategis' continued work under the contract is not a defense to its anticipatory breach of contract claim.

### E. *Defendants' Contractual Right to Terminate an Appeal in Progress*

■ Defendants further argue that the contract should be interpreted as allowing them to end the appeal process at any time without incurring liability under the contract. According to defendants, the contract requires that they authorize an appeal before Strategis could start working on an appeal. Defendants contend that their right to determine whether an appeal should begin encompasses also the right to terminate a pending appeal without incurring liability under the contract.

Although the contract may be interpreted as requiring defendants' authorization before an appeal is begun, it is not susceptible to an interpretation permitting defendants to end an appeal once it is begun without breaching the contract. The provision requiring Strategis to "appeal the values as necessary" is not susceptible to an interpretation permitting defendants to terminate a pending appeal without breaching the contract.

■ This interpretation is consistent with the parties course of dealing in 1987. I may consider this evidence in determining whether the contract is ambiguous. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 n. 3 (Colo.1984). When Strategis was providing services under the 1987 contract it informed defendants that their approval was necessary before proceeding with an appeal before the board of assessment appeals. (Defendants' summary judgment response exhibit 2.) The 1987 contract contains language similar to the language contained in the 1989 contract regarding the necessity of client approval of appeals. (*Compare* Strategis' summary judgment motion exhibit A *with* exhibit D.) A flow chart accompanying the parties' 1987 contract indicates that before an appeal commences defendants' consent is necessary. (Defendants' summary judgment response exhibit 1.) Defendants duly authorized Strategis to appeal the 1987 and 1989 tax values. (Defendants summary judgment response exhibit 2; Leach affidavit ¶¶ 4–14.)

The flow chart and course of dealing between the parties are consistent with the interpretation that a client must authorize an appeal before it is undertaken. This extrinsic evidence does not create an ambiguity in the contract which would allow me to interpret it as permitting defendants to cease an appeal in midstream. Accordingly, I reject defendants' argument that they had the right under the contract to cease the appeal process without breaching the contract.

### F. *Benefit to the Defendants*

■ Defendants also argue that Strategis is not entitled to recover under the contract because they were not benefitted by the tax reduction. I reject this argument because any party to a contract could anticipatorily breach the contract and avoid liability by arguing that it was not benefitted under the contract.

## IV. Defendants' Second Summary Judgment Motion

### A. *Breach of Contract Claim against Pacific Mutual*

Pacific Mutual argues it is not liable on Strategis' breach of contract claim because

it was not a party to the contract. Although the contract expressly states that it is between Strategis and PMRealty, Bower signed it as Pacific Mutual's assistant secretary.

■ Where, as here, a document is ambiguous as to whom it binds it must be construed by means of extrinsic evidence and its meaning is generally determined as other disputed facts. *Beneficial Finance Co. of Colorado v. Bach,* 665 P.2d 1034, 1036 (Colo.App.1983). An agent who enters into a contract on behalf of a disclosed principal binds the principal to the terms of the contract. *Bach,* 665 P.2d at 1036.

■ Pacific Mutual stipulates that Bower had the authority to execute the contract as Pacific Mutual's assistant secretary. (Pretrial order ¶ 4.) Also, Pacific Mutual stipulates that Strategis had authority to perform tax reduction services on its behalf. (Pretrial order ¶ 5.) On March 9, 1989 Bower sent the following letter to Strategis:

> PMRealty Management is the Real Estate subsidiary for Pacific Mutual Life Insurance Company and in that capacity, hereby authorizes Strategis ... to act on behalf of Pacific Mutual Life Insurance Company concerning the real estate property tax assessment on our facility, Mall of the Bluffs, located at 3650 Austin Bluffs Parkway, Colorado Springs, Colorado.
> /s/ Ronald L. Bower
> Senior Vice President

(Strategis' response to defendants' second summary judgment motion exhibit D.) Pacific Mutual further agrees that this letter conferred authority on Strategis to perform tax services on its behalf. (Pretrial order ¶ 5.)

The contract is ambiguous whether it binds Pacific Mutual. Where, as here, the undisputed extrinsic evidence is all one-sided I may determine who is bound by the contract as a matter of law. Given the stipulation that the March 9, 1989 letter conferred authority on Strategis to work on Pacific Mutual's behalf, it is bound under the contract as a disclosed principal.

*See Bach,* 665 P.2d at 1037. No reasonable trier of fact could find otherwise.

**B.** *Strategis' Quantum Meruit Claim*

Strategis pleads its breach of contract and quantum meruit claims in the alternative. I need not address the validity of Strategis' quantum meruit claim because it is entitled to judgment on its breach of contract claim.

## V. Dunn's Motion to Dismiss

On January 13, 1992 defendants filed third-party claims for successor-in-interest and unjust enrichment against Dunn in his capacity as a receiver. Dunn argues I do not have jurisdiction to resolve these claims because defendants did not seek leave of the El Paso County District Court to assert claims against him.

On February 6, 1990 the El Paso County District Court appointed Dunn receiver for the Mall of the Bluffs under sections 38–39–112 and 38–39–113, C.R.S. (1982 Repl. Vol. 16A). On December 20, 1990 the El Paso County District Court entered an order discharging Dunn as the receiver. (Dunn motion to dismiss exhibit C.)

■ A party cannot institute an independent suit against a receiver without first obtaining permission to do so from the receiver's supervising court. *Four Strong Winds, Inc. v. Lyngholm,* 826 P.2d 414, 416 (Colo.App.1992). The supervising court retains jurisdiction over a fiduciary until an order discharging the fiduciary enters. *Lyngholm,* 826 P.2d at 417. An order discharging a fiduciary is a final judgment subject to appellate review. *Lyngholm,* 826 P.2d at 417. The *Lyngholm* court set forth the following procedures a claimant must follow to assert a claim against a receiver appointed under sections 38–39–112 and 38–39–113:

> if a party interested in a receivership proceeding is provided with notice of those proceedings and of the receiver's application for discharge, any claim based upon the receiver's mis- or malfeasance must be presented in those proceedings at that time. After an order discharging the receiver is entered, such

a claim may be asserted only to the extent that C.R.C.P. 60 would authorize the vacation of the order discharging the receiver.

To relieve a party of the effect of a final judgment, that party must demonstrate the existence of some reason justifying such action, such as excusable neglect, lack of jurisdiction, fraud or other equitable considerations.

*Lyngholm,* 826 P.2d at 417.

■ This case differs from *Lyngholm* in that defendants seek to hold Dunn liable as a successor in interest rather than for wrongful acts committed by him in his capacity as a receiver. The procedures outlined in *Lyngholm* must be followed regardless of the basis on which a claimant seeks to imposes liability on a receiver in its official capacity. As recognized by one authority on receivers:

> When the receiver has been discharged, then unless the property has been disposed of, it would seem that the claimant against the receiver should go into the court appointing the receiver, set up the facts and ask that the discharge of the receiver be vacated.

> However, if the receiver has been discharged and all the property in his custody and the custody of the court has been taken out of the receiver's hands, there can be no property out of which he can pay such a claim. After such discharge the remedy of the creditor may be to apply to the court to vacate its order so that the rights of the creditor might be protected.

2 R. Clark, *Law on Receivers* § 574(a) p. 924 (3d ed. 1959) (footnotes omitted).

To maintain their third party claims, therefore, defendants must request that the El Paso County District Court vacate the order discharging Dunn. I decline to stay these proceedings while defendants make such an effort.

## VI. Order

IT IS ORDERED that

(1) the clerk shall enter judgment in favor of Strategis and against defendants Pacific Mutual and PMRealty in the amount of $60,617.06 on Strategis' breach of contract claim;

(2) defendants Pacific Mutual and PMRealty shall pay Strategis' costs as a part of this judgment;

(3) defendants' cross motion for summary judgment and their second motion for summary judgment are denied;

(4) Dunn's motion to dismiss is granted and defendants' third party claims are dismissed without prejudice.