Taylor HAWES and Colorado
Health Care Conversions
Project, Appellants,

v.

COLORADO DIVISION OF INSURANCE;
William V. Kirven, III, in his capacity as
Commissioner of Insurance; Rocky
Mountain Hospital and Medical Service,
Inc., d/b/a Anthem Blue Cross Blue
Shield of Colorado, a Colorado insurance corporation, a continuation of
Rocky Mountain Hospital and Medical
Service, d/b/a Blue Cross Blue Shield of
Colorado, a Colorado nonprofit hospital,

medical-surgical health service corporation; Anthem Insurance Companies, Inc., an Indiana mutual insurance company; Anthem West, Inc., an Indiana stock insurance company; and Caring for Colorado Foundation, Appellees.

No. 99CA2435.

Colorado Court of Appeals.
Division IV.

Feb. 1, 2001.

Certiorari Denied Oct. 15, 2001.*

---

* JUSTICE BENDER would grant as to the following issue:

Whether the court of appeals erred when it affirmed the ultimate fact determination made by the Commissioner that $155 million "equals or exceeds the fair market value" of Blue Cross, notwithstanding the offer by Anthem, a ready, willing and able buyer, to pay $160 million to conclude its acquisition of Blue Cross.

Kelly/Haglund/Garnsey & Kahn LLC, Edwin S. Kahn, David R. Fine, Christine L. Murphy, Denver, CO, for Appellant Taylor Hawes.

Colorado Center on Law and Policy, D. Elisabeth Arenales, Denver, CO, for Appellant Colorado Health Care Conversions Project.

Ken Salazar, Attorney General, Robert M. Howard, Senior Assistant Attorney General, Denver, CO; Patrick H. Cantilo, Special Assistant Attorney General, Cantilo & Bennett, L.L.P., Austin, TX, for Appellees Colorado Division of Insurance and William J. Kirven, III.

Yu Stromberg Cleveland, P.C., Frederick Y. Yu, Barbara L. Crawford, Denver, CO, for Appellees Rocky Mountain Hospital and Medical Service, Inc., d/b/a Anthem Blue Cross and Blue Shield; Anthem Insurance Companies, Inc.; and Anthem West, Inc.

Baker & Hostetler, LLP, Marc D. Flink, Alfred C. Chidester, Denver, CO, for Appellee Caring for Colorado Foundation.

Opinion by Judge KAPELKE.

Appellants, Taylor Hawes and the Colorado Health Care Conversions Project (CHCCP), appeal from the final order of the Colorado Commissioner of Insurance (Commissioner) approving the conversion of Rocky Mountain Hospital and Medical Services, Inc., d/b/a Blue Cross Blue Shield (Blue Cross), from a nonprofit hospital, medical-surgical and health service company to a for-profit corporation. Hawes and CHCCP challenge only that part of the Commissioner's order that determined the fair market value of Blue Cross. We affirm.

The facts are essentially undisputed. As a result of increasing financial difficulties, Blue Cross sought to convert to a stock insurance company under the conversion statute, § 10–16–324, C.R.S.2000. As part of this process, Blue Cross had to submit a plan of conversion to the Commissioner for approval. *See* § 10–16–324(3), C.R.S.2000.

A plan of conversion must "[s]pecify a reasonable treatment for the benefit of the citizens of the state of Colorado of the value of the corporation...." Section 10–16–324(4)(e)(I), C.R.S.2000. Such treatment is "reasonable" if "consideration, determined by the commissioner to be equal to the fair market value of the corporation, is conveyed or issued to one or more qualifying entities." Section 10–16–324(4)(e)(I)(A), C.R.S.2000. Caring for Colorado Foundation (the Foundation), an independent, tax-exempt, social welfare organization, was the qualifying entity designated by the plan to receive that consideration.

After submitting its plan, Blue Cross solicited proposals for its acquisition, and a controlled auction ensued. Anthem Insurance Companies, Inc., and Anthem West, Inc. (collectively Anthem), submitted the prevailing bid. Thereafter, Anthem and Blue Cross entered into an "Alliance Agreement" in which Anthem agreed to purchase Blue Cross for $140 million. The agreement included a so-called "fiduciary out" clause, which preserved Blue Cross' right to negotiate and to consider any other unsolicited, superior offer.

Thereafter, Blue Cross submitted its plan for conversion to the Commissioner. This plan reflected the Alliance Agreement and the $140 million sale price. At that time, Blue Cross also submitted a plan for acquisition of all its newly issued stock by Anthem pursuant to § 10–3–604, C.R.S.2000.

However, before the scheduled hearing on the plan was held, a competing bidder offered to acquire Blue Cross for $155 million. Anthem responded by offering a guaranteed minimum $155 million to the Foundation, or alternatively, $160 million on the condition that the "fiduciary out" clause be eliminated. The day before the hearing, Blue Cross accepted Anthem's offer for $155 million.

The Commissioner conducted a public hearing on the plan pursuant to § 10–16–324(7), C.R.S.2000. At the hearing, the plan of conversion was orally supplemented to reflect the new agreement. Hawes, a Blue Cross subscriber, and CHCCP, a coalition of nonprofit organizations, entered their appearance after being granted full party status by the Commissioner over Anthem's objection.

Following the two-day evidentiary hearing, and after considering expert testimony and volumes of financial reports regarding the value of Blue Cross, the Commissioner approved the plan. In doing so, the Commissioner concluded that the $155 million amount equaled or exceeded the fair market value of Blue Cross so as to constitute "reasonable treatment" for purposes of § 10–16–324(4)(e)(I).

After the purchase was consummated, Hawes and CHCCP filed this appeal under §§ 10–16–324(15) and 24–4–106(11), C.R.S. 2000, challenging only the Commissioner's ruling on the fair market value of Blue Cross.

I.

■ Initially, Anthem contends that Hawes and CHCCP lack standing to appeal the Commissioner's order. Alternatively, Anthem asserts that, even if Hawes and CHCCP may properly appeal from the Commissioner's order approving the plan of conversion, only the Foundation has standing to

challenge the valuation of Blue Cross. We disagree with both contentions.

Under § 10–16–324(15), the Commissioner's final action may be appealed by "any person that was a party to the agency proceeding and was adversely affected or aggrieved by the final agency decision." For purposes of judicial review of an agency action, a party is "aggrieved" if the party has "suffered actual loss or injury" or is "exposed to potential loss or injury to legitimate interests. . . ." Section 24–4–102(3.5), C.R.S.2000.

■ To determine if Hawes and CHCCP have standing, we must ascertain whether they have alleged an injury in fact to an interest that, as a matter of law, is protected under the relevant statutory scheme—here the conversion statute. *See Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission*, 620 P.2d 1051 (Colo.1980). In the context of an agency action, however, the injury-in-fact element of standing may be satisfied by a showing that the administrative action threatens to cause an injury. *See Public Service Co. v. Trigen–Nations Energy Co.*, 982 P.2d 316 (Colo.1999).

In addition to imposing the "reasonable treatment" requirement, the conversion statute specifically provides that a plan for conversion must not be prejudicial to the subscribers of the corporation or to the citizens of Colorado. Section § 10–16–324(4)(b), C.R.S.2000. The plan must also be "fair and reasonable and not contrary to the law or to the interests of subscribers . . . or the public." Section 10–16–324(9)(b), C.R.S.2000.

Here, in granting Hawes and CHCCP full party status, the Commissioner specifically found that they were persons potentially affected or aggrieved by the proceedings. Hawes represents the interests of individual policy holders and the public to ensure they were not adversely affected by the conversion. CHCCP represents a variety of nonprofit and public interest organizations that are potential recipients of the conversion funds, since those funds ultimately will be distributed by the Foundation. Indeed, the Commissioner expressly found that the CHCCP could be adversely affected if the Foundation were not sufficiently funded.

On the record before us, we conclude that Hawes and CHCCP have established protected interests under the conversion statute and have sufficiently alleged the threat of injury resulting from the Commissioner's valuation of Blue Cross to give them standing for this appeal. *See Public Service Co. v. Trigen–Nations Energy Co., supra.*

## II.

■ Hawes and CHCCP contend that the Commissioner's determination that $155 million equaled or exceeded the fair market value of Blue Cross was erroneous and contrary to law. Specifically, they contend that, despite the existence of evidence supporting lower valuations of Blue Cross, its fair market value was conclusively determined by the amount of the highest bid, $160 million. We are not persuaded.

■ As noted above, in determining whether a plan of conversion complies with the "reasonable treatment" requirement of § 10–16–324(4)(e)(I), the Commissioner must ascertain the fair market value of the converting entity. This determination of fair market value is a finding of ultimate fact as it involves a conclusion of law or a determination of a mixed question of law and fact. *See Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146 (Colo.1988). We may not disturb such a finding if it is supported by the evidence and has a reasonable basis in law. *See Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982).

The conversion statute does not provide a definition of "fair market value." However, as the parties have recognized, the term has been repeatedly defined in the case law as the price that a willing buyer will pay a willing seller under normal economic conditions. *See Board of Assessment Appeals v. Colorado Arlberg Club, supra; May Stores Shopping Centers, Inc. v. Shoemaker,* 151 Colo. 100, 376 P.2d 679 (1962); *see also* § 2–4–101, C.R.S.2000 (words and phrases must be construed according to their common usage, and a term that has acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed accordingly).

Contrary to the contentions of Hawes and CHCCP, the $160 million offer does not conclusively establish the market value of Blue Cross. Significantly, Blue Cross did not accept the $160 million offer, which was expressly contingent upon Blue Cross' forgoing a valuable contractual right-namely, the right to consider and negotiate superior proposals pursuant to the "fiduciary out" clause. Blue Cross was apparently unwilling to give up that right, as evidenced by its decision to accept the $155 million offer, which did not impose that condition.

Hawes and CHCCP have cited no case law, and we have found none, suggesting that the analysis of fair market value must be limited to consideration of a single unaccepted, conditional bid, even in an auction situation. Also, nothing in the statute indicates that such a limited definition of fair market value was intended. To the contrary, the statute expressly requires the Commissioner to consider a variety of factors in determining fair market value, including "market value, investment or earnings value, net asset value, and a control premium, if any." Section 10–16–324(4)(e)(I)(B), C.R.S.2000.

Additionally, even if we assume that legislative history would be relevant to our analysis, our review of the relevant legislative proceedings reveals nothing suggesting that the General Assembly intended such a narrow definition of fair market value.

Hawes and CHCCP do not dispute that the expert testimony and financial data regarding the market value of Blue Cross are consistent with the Commissioner's findings regarding fair market value. Further, evidence of the agreed $155 million sales price was presented at the hearing, and such evidence is probative, albeit not conclusive, of fair market value. *See Four Strong Winds, Inc. v. Lyngholm,* 826 P.2d 414 (Colo.App. 1992).

We also reject appellants' contention that statements by Anthem's chief financial officer indicating that $160 million did not exceed the fair market value of Blue Cross would necessarily render erroneous the Commissioner's findings on value. As discussed, the record establishes that a valuation of $155 million was within the possible range of

fair market value based on the evidence presented. *See Rhodes v. Amoco Oil Co.*, 143 F.3d 1369 (10th Cir.1998)(recognizing that no universally infallible index of fair market value exists and that there may be ranges of prices reasonably evidencing fair market value). Indeed, both experts here used ranges to estimate the fair market value of Blue Cross. Further, as noted, the $160 million offer was a conditional one—and inclusion of the condition apparently made Blue Cross unwilling to accept that offer.

Finally, to the extent Hawes and CHCCP assert that the Commissioner erred in failing to consider the $5 million difference between Anthem's offers as a "control premium" pursuant to § 10–16–324(4)(e)(I)(B), we disagree. A "control premium" typically refers to the additional amount a buyer would pay for a block of shares that would give the buyer control of a corporation. *See generally Foltz v. U.S. News & World Report, Inc.*, 275 U.S.App.D.C. 145, 865 F.2d 364 (1989); *Oberly v. Kirby*, 592 A.2d 445 (Del.1991).

Here, both of Anthem's offers sought 100% of Blue Cross's shares upon conversion. Thus, the additional $5 million included in the $160 million offer merely represented an attempt by Anthem to induce Blue Cross to surrender its ability to consider other offers, and it did not constitute a control premium within the contemplation of the statute.

Because the Commissioner's order has a reasonable basis in law and is supported by the evidence, we thus will not disturb it on appeal.

Accordingly, the order is affirmed.

ERICKSON ** and CRISWELL **, JJ., concur.